STREICH, Appellant, v. BOARD OF EDUCATION OF INDE-
PENDENT SCHOOL DISTRICT OF CITY OF
ABERDEEN et al., Respondents.

(147 N. W. 779.)

**1.  Schools—Pupils—Health Regulations—Physical Report—Powers
of Board of Education—Police Powers.**

A regulation of the board of education of a city school dis-
trict which, as a condition to their admission, required each
pupil to furnish a physical report based upon a physical
examination by a physician furnished by the board, or, at the
option of the parents, by one selected and paid by them,
the purpose of which regulation was to guard the community
and pupils against the spread of contagious and infectious
diseases, and the enforcement of which had resulted in
greatly improving the childrens' health and cleanliness, was
a valid regulation.  Conceding that such regulation was a
matter of government and of legislation, and related to the
health of the pupils, and though the Legislature has delegated
certain police powers relating to health to the board of health
and to medical examiners, yet such regulation, made by
the school board, was valid, since municipal or quasi munici-
pal corporations have such police powers as may be necessary
to carry out the purposes for which such board or body was
created.

**2.  Same—Pupils—Qualifications for Admission, Adding to—Phy-
sical Report.**

Such regulation was not invalid, as adding to the qualifica-
tions for admission prescribed by law, since, under it, no pupil
would be excluded from the school except upon his own
volition, or unless the physical examination showed him to be
suffering from some disease rendering him a menace to his
associates.

**3.  Same—Pupils—Physical Examination—Non-statutory Branches—
Eligibility.**

That physical culture, athletics, and cultivation of vocal
talent are not required by statute to be taught in public
schools, does not render such regulation invalid, there being
nothing in the statute forbidding school districts to provide
instruction in branches other than those specified, and every
child attending school having the right to share the benefits
of such instruction, so far as physically and mentally able.

**4.  Constitutional Law—Police Power, Unreasonable Exercise of—
Personal Rights—Pupils—Health Regulations.**

A regulation of a city board of education requiring pupils
to furnish a physical report based upon a physical examination

by a physician, was not invalid, as constituting such violation of a personal right as is not justified by the end sought, since the conventionalities of the time recognize the absolute propriety of submitting one's body to examination of a physician; it not being shown that any exposure of the person, or any manipulation of the body such as would shock the sensibilities of the most refined person.

5.   Schools—Pupils—Health Regulation—Mental Suggestion of Diseases.

Such regulation was not invalid, on the theory that the physical examination might cause such mental suggestion of diseases as might result in disease, since the child examined need not know the contents of the report, and the doctrine of mental suggestion not being an accepted doctrine recognized by courts.

6.   Constitutional Law—Schools—Pupils—Physical Reports—Religious Liberty.

A regulation of a city board of education, requiring physical examination of each pupil by a physician, and a report based thereon, involves no question of religious liberty, since school boards, in making rules for control of public schools, should not base them upon the tenets of any particular religious sect.

(Opinion filed June 8, 1914.)

Appeal from Circuit Court, Brown County.   Hon FRANK McNULTY, Judge.

Application for a writ of mandamus, by John H. Streich against the Board of Education of the Independent School District of the City of Aberdeen, in the County of Brown, State of South Dakota, and another.   From an order refusing a peremptory writ, the petitioner appeals.   Affirmed.

*E. C. Ryan,* and *Geo. W. Case,* for Appellant.

*R. F. Williamson (Charles M. Stevens* and *Geo. N. Williamson,* of counsel,) for Respondents.

(1)   Under point one of the opinion; Appellant cited:

Article XI, Chapter 135, Session Laws 1907, Secs. 178, 190, 204; Article II, Section 46; Article XIII, Section 216; Constitution, Section 1, Art. VIII; Sub-division Fourth, Art. XXII; Chapter 109, Session Laws, 1913; Potts v. Breen, 47 N. E. 81; State v. Burdge, (Wis.) 70 N. W. 347, at page 350; Field v. Clark, 143 U. S. 650; People ex rel. Jenkins v. Board of Education, (Ill.) 84 N. E. 1046; Matthews v. Board of Education, (Mich.) 86 N. W. 1036; Potts v. Breen, (Ill.) 47 N. E. 81; Osborne et al. v.

Russell et al., (Kan.) 68 Pac. 60; Matter v. Smith, 146 N. Y. 68; Chapter 223, Laws of 1903; Glover v. Board of Education of Lead, (S. D.) 84 N. W. 761:

Respondent cited:

28 Cyc. 692, and cases, notes 65 and 66; Town of Lake View v. Rose Hill Cemetery Co., 70 Ill. 191, 22 Am. Rep. 71, 73; Matter Jacobs, 98 N. Y. 98, 50 Am. Rep. 636, 641; Leisy v. Hardin, 135 U. S. 127, 34 L. Ed. 138; 8 Cyc. 863, and note 61; Chicago v. The Gunning System 214 Ill. 628, 73 N. E. 1035, 70 L. R. A. 230; Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77; License Cases, 5 How. 583; Plumbing Supply Co. v. Bd. of Education, (S. D.) 142 N. W. 1131, 1132; Associated School, etc., v. School Dist., (Minn.) 142 N. W. 325, 326; 28 Cyc. 124, and cases 61; 2 Dillon on Munic. Corp., Secs, 974-978; 35 Cyc. 817-819, notes and cases; 28 Cyc. 260, 261, and notes 52 and 53, and pp. 707, 709; Crawfordville v. Braden, 130 Ind. 149, 30 Am. St. R. 214, 14 L. R. A. 268; Bd. of Education of Cartersville v. Purce, 101 Ga. 422, 41 L. R. A. 593; Abeel v. Clark, 84 Cal. 226, 21 Pac. 383.

And submits that: Aside from specific grants of power, the legislature has invested the board of education with authority to make the rule in question and require obedience to it as a condition of enjoying the privileges of the schools of the city. Article in volume 20 of Case and Comment, under date of November, 1913, page 378; Glover v. Bd. of Education, 14 S. D. 109, 84 N. W. 761:

Constitutional provisions: Article VI, Sec. 3; Article XXII, Subd. 4; Article VIII, Sec. 1.

Statutory provisions: Chapter 135, Laws of 1907, Secs. 107, 178, 190, 204.

(3) Under point three of the opinion, Appellant cited:

Section 138 of the Education Act of 1907; Section 1, Chapter 19, Laws of 1909.

(4) Under point four of the opinion, Appellant cited:

Union Pac. Ry. Co. v. Botsford, 11 Sup. Ct. Rep. 1000 (141 U. S. 250); Cooley on Torts, p 29.

(6) Under point six of the opinion, Appellant cited:

Ohio State Journal, in its issue of November 27, 1911; Bill of Rights, Article Six, Constitution of South Dakota.

Respondent cited:

Section three of Article six, Constitution; Ferriter v. Tyler, 48 Vt. 444, 21 Am. Rep. 133; Donahoe v. Richards, 38 Me. 61, Am. Dec. 256; State v. Pierson, 176 N. Y. 201, 63 L. R. A. 187; Owens v. State (Oklahoma Crim. Rep.) 36 L. R. A. (N. S.) 633.

WHITING, J. [1] This is an appeal from an order refusing a peremptory writ of mandamus. The sole question presented is the right of respondents to require, of the children seeking admission into the schools under their charge and as a condition to their admission, the furnishing of a certain report. For several years there has been in force in said schools, a resolution requiring pupils, at the beginning of each school year, to obtain and furnish what is termed a "Physical Record Card." One side of this card is to be filled out by the teacher, the other by some regular licensed physician. It is optional with the pupil and parents whether such physician be of their own selection and the examination at their own expense, or such examination be made and card filled out by a physician furnished by respondent board and at the expense of the school district. The side of the card to be filled out by the teacher is in words as follows

"Physical Record Card—Aberdeen Public Schools, S. D.
School ...................... Grade ....... Date ....
Name .............................. Age .......
Parents' Name ...................... Residence .........
Nationality .................. No. in Family—Adults ......
Children .................
Weight .............. Height ......... Posture ..........
Activity—Physical ...... Mental ...... Mouth Breather....
Attendance .................... Behavior ..............
Delinquency in Studies ...............................
Nasal Voice ................. Offensive Breath .........
Ears—R...................... L ...................
Eyes—R ...................... L ...................
Vaccination Scar ................. Fever ...............
...................
Teacher."

The other side is in words as follows:
"History of Contagious Diseases ......................

Heart .......................... Lungs ...............
Throat, Tonsils, etc. ..............................
Skin Diseases ........................... Spine ........
Dental Examination.
Permanent teeth needing attention—number ...............
Temporary teeth needing attention—number ...............
   (Diagram of Teeth)
Teeth or roots to be extracted ...............Yes.... No....
Do the teeth need cleaning (by dentist) ........Yes.... No....
Has the child any abscesses in mouth ..........Yes.... No....
Has the child irregular teeth ..................Yes.... No....
Recommendations .........................  ..............
Results ....................  ..............

Medical Examiner."

Appellant has two children of school age entitled to the privileges of the schools under respondents' charge. These children sought admission into such schools at the beginning of the current school year; they were requested to furnish the above card properly filled out; this appellant refused to permit; and they were denied admission.

Upon this appeal, the right and propriety of requiring the teacher's report is conceded. Appellant's contention is thus stated in his brief:

"It is the contention of the plaintiff, that upon the facts shown by the record, plaintiff had a right to have his children admitted as pupils in said schools without their submitting to such or any physical examination and that the defendants had no power or authority, under the laws and constitution of South Dakota, to require that plaintiff's children submit to a physical examination as a condition precedent to be performed by them before they would be admitted as pupils in said schools, and that defendants had no legal authority to deny them admission as pupils therein because they failed to present such card and refused to submit to such physical examination by a licensed physician."

Appellant calls attention to those provisions of our constitution imposing upon the legislature the duty to establish and maintain a general and uniform system of public schools, where-

in tuition shall be without charge, and which shall be equally open to all and free from sectarian control; he also calls attention to the fact that the statute has fixed but two qualifications for admission to a school—that the pupil must be of school age and must reside within the school district; and he contends that there is no law of this state conferring upon teachers or school officers any power or authority to make and enforce any additional requirement for such admission. He contends that, "Matters of government, legislation and regulations relating to health of the people come within the police powers of the state over which the legislature alone has control;" that "The legislature * * * has conferred such power * *· * upon a Board of Health and Medical Examiners;" that, "The legislature has lodged in the State Board of Health all authority and power relating to health and health regulations which it has seen fit to delegate to any controlling body or board." Conceding that the action of respondent board in requiring the "Physical Record Card" was a matter of government, was legislation, and was a regulation *relating to the health of the pupils*—which at least might be one of the incidents to or results flowing from such action of the board—and conceding that the police power of the state has been by the people committed to the control of the legislature, yet it does not follow that, because the legislature has delegated certain police powers to some specific board, another board or corporate body is denied the exercise of this same power to such extent as may be necessary to carry out the purposes for which such board or body was created; certainly no such claim can be made in a case where such board or body was created or authorized by that very legislative department in whom all police power is primarily entrusted by the people. Respondents contend that there is conferred upon every municipal or quasi-municipal corporation, by necessary implication based upon the law of necessity, the right to exercise such police power as is needful for the carrying out of those purposes for which such corporation or quasi-corporation has been established. It is therefore conceded by both parties that the power sought to be exercised by respondents belongs to what is known as "police power;" and the sole question presented is the authority of respondents to invoke and exercise this particular

power under the circumstances existing at the time of its exercise.

It is clear that all police power is based upon necessity and upon the inherent right of self-preservation possessed by all political bodies, and is therefore a power which has been recognized and exercised from the time men first associated together; it "is that inherent or plenary power which enables the state to prohibit all things hurtful to the comfort, safety, and welfare of society, and may be termed the law of overruling necessity." (Chicago v. The Gunning System, 214 Ill. 628, 73 N. E. 1035, 70 L. R. A. 230, 2 Ann. Cas. 892) ; it "is the name given to that inherent sovereignty which it is the right and duty of the government or its agents to exercise whenever public policy in a broad sense demands for the benefit of society at large, regulations to guard its morals, safety, health, order, or to insure in any respect such economic conditions as our advancing civilization of a highly complex character requires." (8 Cyc. 863.) While it is possible to clearly define the nature of this power, and, in a general way, to point out the scope and extent thereof, yet it would be utterly impracticable—and in fact inconsistent with that very law of necessity upon which police power rests —for the law making power, except in rare cases, to undertake to restrict, within fixed bounds, the exercise of this power by the several political agencies through which the various functions of government are to be performed. This becomes very apparent when one contemplates the new and ever-changing social, economic, and political conditions resultant from the physical, intellectual and moral evolution of the human race, which, as well as the peculiar conditions existent in a particular locality, may, from very necessity, call for continual changes in the exercise of this power. What was a reasonable exercise thereof in the days of our fathers, may today seem so utterly unreasonable as to make it difficult for us to comprehend the existence of conditions that would justify same; what would by our fathers have been rejected as unthinkable, is today accepted as the most proper and reasonable exercise thereof; and what would be a proper exercise thereof under conditions existing in one place would, at the very same time, be improper under the conditions existing in another place. There is nothing known to the law

that keeps more in step with human progress than does the exercise of this power; but, while this fact is evidenced to a certain degree by current legislative enactments, yet for the reasons above stated, it is upon the courts that the people mainly rely for such recognition of changing conditions and such careful supervision over the exercise of this far-reaching and all-important power as will properly guard the rights both of the individual and of the public. To the legislature is given the power to create and to authorize the creation of municipal and quasi-municipal bodies through which, as governmental agencies, the public welfare is sought to be promoted; hence we have townships, towns, cities, counties and school districts. 35 Cyc. 817; Associated Schools etc. v. School Dist., 122 Minn. 254, 142 N. W. 325, 47 L. R. A. (N. S.) 200. Each of such agencies has a certain work to perform in the promotion of such public welfare. Necessarily incident to the creation and existence of one of these political entities is the power to provide those rules and regulations upon the proper enforcement of which depends its ability to perform the particular function for which it was created. While express legislation may give to such agency certain express police powers, it should never be held that the naming of these powers precludes it from exercising any other powers; but it should be held that upon the creation of a municipal body, it becomes possessed of all necessary and reasonable police power, and that express enactments relating to the police power of such body do not curtail the necessary and reasonable police powers of such body except where it is clear that it was the legislative intent to so curtail them. The following words, though spoken of a city, are just as applicable to other bodies created as governmental agencies: "The police power primarily inheres in the state; but the legislature may, and in common practice does, delegate a large measure of it to municipal corporations. The power thus delegated may be conferred in express terms, or it may be inferred from the mere fact of the creation of the corporation. The so-called inferred or inherent police powers of such corporations are as much delegated powers as are those conferred in express terms, the inference of their delegation growing out of the fact of the creation of the corporation, and the additional fact that the corporation can only fully accomplish the objects

of its creation by exercising such powers." City of Crawford-
ville v. Braden, 130 Ind. 149, 28 N. E. 849, 30 Am. St. Rep.
214, 14 L. R. A. 268. The legislature of this state has not
forbidden school districts the exercise of such police power
as may be reasonably necessary to insure the proper discharge
of the work for which the districts are created. In determining
whether, in a given case, there has been a· reasonable exercise
of this inherent power, the court must consider the particular
facts of that case; each case must stand by itself.

[2] Appellant urges that respondents were adding to the quali-
fications for admission prescribed by law. There is no merit in
this contention; one might as well contend that to require a pu-
pil to take his term examination to ascertain his progress in
school work, was the adding of a qualification for membership
in the school. Under the regulation complained of, no person
is excluded from the schools except upon his own volition. Re-
spondents merely seek to learn those things, concerning the men-
tal and physical condition of the pupil, which they think useful
and needful in the proper discharge of the functions of the
school and especially in the proper handling of the individual
pupil. The report asked for would lead to the exclusion of the
pupil only when it showed that the child was not of school age,
that it was not a resident of the district, or, if the respondents
so ordered, when it showed that the child was then suffering
from some disease rendering it a menace to its associates.

Appellant has cited many cases in which it has been held
that it is beyond the power of a school board to require pupils
to be vaccinated as a condition precedent to attending school.
Such decisions have no application to the question before us;
it is one thing to say that requiring a report from which the
board may learn the physical condition of a child is a reasonable
exercise of police power, and quite another thing to say that a
rule prescribing a certain method of medical treatment is a rea-
sonable exercise of the police power; and yet this court has
held that, under certain conditions, the requiring that pupils be
vaccinated is a reasonable exercise of the police power. Glover
v. Bd. of Education, 14 S. D. 139, 84 N. W. 761. By so holding
this court recognized that to the school board there is delegated

the right to exercise such police power as is reasonably necessary in carrying out the duties imposed upon it.

Was the information sought such as would tend to promote the welfare of the child himself in his school work, as well as to promote the well-being of the school as a whole? Respondents, in the return to the alternative writ issued herein, referring to the rule requiring the furnishing of the report, alleged:

"That said rule and regulation was adopted and enforced by said Board for the purpose of guarding and protecting the community and the pupils attending upon said schools against the spread of contagious and infectious diseases and for the purpose of ascertaining and determining whether the attendance of any pupil upon any of said schools would be a menace to the health of other pupils and to the community at large on account of any disease with which they might be afflicted."

By stipulation of parties the following allegations in respondents' answer are admitted to be true:

"That since the adoption and enforcement of the aforesaid rule and regulation of the Board of Education upon the opening of the school in the year 1911, the general condition of the children as to their healthfulness has greatly improved and no epidemics of contagious or infectious diseases have broken out in the schools or caused the closing of the schools since that time, although contagious and infectious diseases have been epidemic during the school year in the city, and in former years prior to the adoption of said rule it had been carried into the schools to the detriment of the schools and spread through the community, and that since the adoption of said rule the general condition of the schools as to cleanliness and freedom from filthy vermine has greatly improved until it has been practically eradicated by the enforcement of this rule."

Can it be successfully contended that, because the statute has entrusted to some particular board the general supervision of matters pertaining to the health of our people, that by implication they have forbidden school boards from bringing about results such as above, when it can be done by requiring reports such as the one before us?

Respondents further allege in their return:

"That physical culture and athletic exercises and the cultivation of vocal talent were and are among the regular parts of the regularly adopted course of instruction and exercises in said school and said rule and regulation was further adopted and is enforced for the purpose of ascertaining and determining whether any pupil presenting himself for enrollment in said schools or for attendance therein had or has any physical defect or ailment or imperfections so that such exercises regularly engaged in by other pupils would be dangerous or detrimental to the health of said pupil or pupils, and such rule and regulation was further adopted and is enforced for the purpose of ascertaining and determining whether any pupil has such physical defect that requires special assistance or attention in the regular prosecution of his or her studies, in order to maintain its regular position in its classes and whether such pupil requires any special attention or provision to be made for it as to its position in its classes while attending recitations, so as to be able to hear and see and secure full benefit of the work in such recitation period."

[3] Appellant urges that physical culture, athletics, and the cultivation of vocal talent are not among the things prescribed by statute to be taught in the public schools; that, inasmuch as they are not so prescribed, a pupil cannot be required to take this part of the course provided; and that, for these reasons, there exists no grounds for requiring any physical report seeking information to be used in connection with this part of the school work of respondents' schools. While the statutes do not prescribe these and many other things now provided for in the up-to-date school of today—especially in the schools of the larger cities where sufficient revenue can be raised with which the necessary teachers and equipment are secured—yet there is nothing in such statutes forbidding school districts to provide for instruction in branches other than those specified therein; and when the taxpayers of a school district have furnished the needed revenues, and the school officers have supplied the teachers and equipment, every child attending the school has a right to share the benefits in so far as he is physically and mentally able. It is not necessary for us, at this time, to intimate any views on the power of respondents to require pupils to pursue studies not prescribed by statute, for the reason that it does not ap-

pear that appellant ever advised respondents, nor did he advise the trial court in this action, that he did not wish his children to take the courses in physical culture, athletic exercises and vocal culture. The information sought through these reports would necessarily tend to aid respondents in giving to appellant's children the greatest benefit possible in pursuing these additional courses provided for them.

Was the source from which the information was required a proper one from which to seek same? It is evident that this information to be entitled to due consideration, should come from some one having expert knowledge of the matters therein referred to; it could not be furnished by the parent nor the teacher. It is true that much of it could be as well furnished by a competent dentist, but there is some which he could not furnish, and it all could be furnished by a competent physician. Recognizing the value to society of that learning and skill possessed by the members of the so-called "learned professions," among which is the medical, and also realizing the danger to society that comes from the practice of some of these professions by those who have little or no skill and learning therein, there have been enacted laws requiring of those seeking to practice certain professions, among them the medical, the procuring of a license authorizing them to practice such professions, which license is based upon an examination provided for by law. Can any one contend, as a legal proposition, that an expert, licensed as such under the laws of our state and so licensed because he has passed the very examination prescribed by law, is not a proper person from whom to seek information peculiar to his special field of knowledge?

[4] Does the furnishing of this report necessitate such a physical examination as amounts to an unreasonable violation of a sacred right, and, therefore, the requiring of this report amount to an unreasonable exercise of police power? It is certainly clear, for all the reasons hereinbefore stated, that this is a reasonable exercise of the police power unless it is made unreasonable from the fact that it is such a violation of personal right as is not justified by the end sought. Appellant urges that, "The rule in question compelled the plaintiff's children to submit, either to a trespass upon their most private and sacred rights

or yield up their right to attend the public schools conferred upon and granted to them by the state." It seems to us that appellant confesses that he has no standing, under the facts before us, when he says in his brief:

"If a physical examination of the child were absolutely necessary as a prerequisite to its admission to classes receiving instruction in physical culture, but its parent objects to the child submitting to such physical examination, then a rule providing that unless the child submitted to such physical examination he would be denied admission to those particular classes, might be upheld as being reasonable."

If the right of a child to be protected from such a physical examination as this "Physical Record Card" calls for is a sacred right, we cannot see how any rule, which would deprive a pupil of the right to take any part of a course unless it submitted to such examination, could be a "reasonable" rule; but, if the examination would be "reasonable" as a condition precedent to instruction in these extra courses, it was "reasonable" under the facts before us.

Need a child suffer any indignity or a violation of any sacred right by submitting to such physical examination as would be necessary in order that a physician might fill out the report called for? Appellant did not prove, nor do we find anything in the report requiring, that there need be any exposure of the person of the child or any manipulation of its body such as would shock the sensibilities of the most refined person. Here again, we must not overlook the person who makes the examination; the conventionalities of our time recognize the absolute propriety of submitting one's body to the examination of a physician, whenever such examination is made for the purpose of gaining information concerning one's physical condition. The established customs—the conventionalities of the time—are matters to be considered in determining the reasonableness of a particular action; therefore a thing may be reasonable though it conflicts with the individual views of the few if it conforms to that of the many. Such an examination as the report calls for could not subject a child to anything not in perfect harmony with the conventions of today, could not subject it to indignity, and would be reasonable.

[5] In appellant's brief it is urged that the examination called for may result in such mental suggestion of diseases as may result in mental disease germs. Counsel has quoted an article in support of such contention, but he has failed to point out how the examination called for need, in any manner, suggest disease to the child, the child need not know the contents of the report. If such an examination is a menace to a child's health owing to the danger of mental suggestion, the study of physiology and hygiene should be banished from our schools. The time may come when the contentions of appellant will become the accepted doctrine of the day; but courts must follow the accepted doctrine of the present, except when, through competent evidence submitted, the fallacy of a particular doctrine is established. No question of therapeutics is presented by this appeal.

[6] Appellant's brief suggests that the requiring of the physical examination of appellant's child against appellant's wishes is "an invasion of the rights of citizens under the constitution and laws of the land, and the higher right of the freedom of his mental determination of that which to him constitutes the most sacred right, and to him it may be a part of his worship of Deity." In these last words we might conclude there was to be found the real foundation of appellant's opposition to the rule which he is seeking to have set aside, were it not for the fact that his counsel, upon the oral argument of this cause, repeatedly assured this court that the question before us was in no sense a religious question but one entirely separate and distinct from anyone's religious belief. We agree fully with counsel, as certainly the school-boards of our land, in making rules for the control of our public schools, should not base the same upon the tenets of any particular religious sect or sects.

Repeating again that the reasonableness of any rule involving the exercise of police power must depend upon the particular circumstances surrounding the making of the rule, and that, for that reason, each case must stand by itself, we have no hesitancy in holding that the requiring of the report in question was, under all the surrounding conditions, reasonable. The judgment appealed from is affirmed.