ERICKSEN, Appellant, v. CITY OF SIOUX FALLS, Respondent

(14 N. W. 2d 89.)

(File No. 8529. Opinion filed April 7, 1944.)
Rehearing Denied August 7, 1944.

**Parliman & Parliman, Danforth & Danforth,** and **Raymond E. Dana,** all of Sioux Falls, S. D., for Appellant.

**Roy D. Burns** and **Claude A. Hamilton,** both of Sioux Falls, S. D., for Respondents City of Sioux Falls and others.

**Boyce, Warren & Fairbank** and **John S. Murphy,** all of Sioux Falls, S. D., for respondent John Morrell & Co.

VAN BUREN PERRY, Circuit Judge.   This action is brought by the plaintiff as a citizen, resident and taxpayer of

the City of Sioux Falls against the City of Sioux Falls and its governing board of commissioners, and against John Morrell & Company, a corporation owning and operating a packing plant in said city. The purpose of the action is to have declared invalid a certain contract entered into in 1926 and amended in 1940 between the governing board of the city and John Morrell & Company relating to the disposition of the industrial sewage from said packing plant through the sewage system and disposal plant owned by the city, and to procure an injunction restraining the further use of the city sewage system and plant for the disposal of the company's industrial sewage. The trial court denied injunction and held the contract valid, from which the plaintiff appeals.

The findings of fact and conclusions of law by the trial court were as follows:

"1. That the plaintiff at the times mentioned in the Complaint was and now is a citizen and taxpayer and resident of the City of Sioux Falls, wherein he has been engaged in the practice of his profession of medicine and surgery.

"2. That the defendant City of Sioux Falls at the times mentioned herein was and now is a municipal corporation of the first class of the State of South Dakota governed by a Board of Commissioners consisting of a Mayor and two Commissioners, and that the defendant John T. McKee is the Mayor and the defendants Bert T. Yeager and Joseph S. Nelson are Commissioners of the City of Sioux Falls and were such officers at all times mentioned in the Complaint.

"3. That the defendant John Morrell & Company at all times mentioned in the Complaint was and is a corporation duly organized and existing according to law with its place of business located in the City of Sioux Falls and was and is a taxpayer of the City of Sioux Falls.

"4. That the defendant John Morrell & Company in the year 1911 built within the City of Sioux Falls a meat packing plant and since such time has operated said packing plant within the City of Sioux Falls.

"5. That prior to the year 1927 the sewage originating within the City of Sioux Falls including both domestic and

industrial sewage was discharged into the Big Sioux River; that in the year 1927 the City of Sioux Falls completed the construction of and placed in operation a sewage disposal plant for the treatment and disposal of all domestic and industrial sewage originating within the City of Sioux Falls; that since such sewage disposal plant was put in operation, all sewage entering the Sioux Falls disposal plant from the plant of John Morrell & Company has originated within the limits of the City of Sioux Falls.

"6.   That such sewage disposal plant was designed and constructed for the purpose of receiving the industrial sewage from the packing plant of John Morrell & Company, together with other industrial sewage originating within the City of Sioux Falls, and that on the 13th day of September, 1926, the City of Sioux Falls and John Morrell & Company duly and regularly entered into a written contract relating to certain pre-treatment to be given the sewage from the John Morrell & Company plant and sewage pumping costs to be paid by said John Morrell & Company, which written contract was received in evidence as Exhibit 59, a true copy of which is attached hereto and made a part of this Finding.

"7.   That the City of Sioux Falls and John Morrell & Company operated under and carried out the terms of said contract, Exhibit 59, until March 1, 1940, when such contract of September 13, 1926, was amended by an agreement between said parties, duly and regularly entered into on March 1, 1940, which was received in evidence as Exhibit 58, a true copy of which is attached hereto and made a part of this Finding.

"8.   That John Morrell & Company and the City of Sioux Falls have fully performed and carried out the terms of said contract, Exhibit 58, and that pursuant thereto John Morrell & Company has paid for additions and improvements to the sewage disposal plant of the City of Sioux Falls in the sum of approximately $70,549.65.

"From the foregoing Findings of Fact the Court makes the following Conclusions of Law:

"1.   That the defendants are entitled to Judgment dis-

missing the Complaint of the plaintiff on its merits and to judgment for costs."

Except as to the legal effect of the contracts, the evidence supports the findings of the court.

The contracts between the city and the company referred to in the findings were as follows:

Exhibit 59 was a contract dated September 13, 1926, between the City of Sioux Falls (hereinafter referred to as the city), John Morrell & Company (hereinafter referred to as the company) and the Kittery Realty Co. It recited that the city desired to build a sewage pumping station and mains upon and over certain land belonging to the Realty Co.; that the Realty Co. owned the packing house and other lands leased by Morrell & Company; that Morrell & Company desired to have the sewage from the packing plant disposed of through the city main and pumping station, and it was agreed that the city should construct certain mains from the end of the trunk sewer of the city to the pumping plant; that upon completion of such mains, pumping station and disposal plant the company might connect with said main; that the company should install certain suitable equipment for the fine screening, sedimentation and grease skimming of all the company sewage before it entered the mains; that the company should pay to the city its pro rata share of the cost of pumping its sewage and a part of certain fixed and operating charges.

The contract had no time limit. Either party could cancel it at will. The parties operated under it until March 1, 1940 when a contract was entered into as hereinafter set forth.

In the meantime, the record shows, in November 1939 the sewage disposal plant had ceased to function and from then until August 1940, while repairs were being made, the raw or untreated sewage, of the city, including that of Morrell & Company was poured into the Big Sioux River. The city and the company had jointly engaged the firm of sanitary engineers who originally planned the disposal plant and again hired them to survey the situation and make recommendations and plans for the repair and improvement of the

plant. This firm had reported that the filter beds were clogged, due to the presence of too much fine stone in the filter bed and the presence of grease in the sewage which had coated and clogged the filter beds, which grease was due to the industrial wastes. Other serious problems had also developed. Both the city and the company had expanded. A large program of corrective measures and improvements was laid out. The city and company were at the time threatened with suits for the pollution of the river. See Ericksen v. Morrell & Co. et al., 70 S. D. 38, 14 N. W.2d 88.

Exhibit 58, referred to in the findings of the trial court as a contract "duly and regularly entered into" is a contract between the city and the company "amending" the former contract. It is dated March 1, 1940 and reads:

"Whereas, the City of Sioux Falls, in its municipal capacity, has constructed a sewer system and sewage disposal plant, which said sewage disposal plant is in need of improvements and betterments, and

"Whereas, the sewage originating in the John Morrell & Company packing plant in the City of Sioux Falls has been for many years last past handled through the sewage disposal system of the City of Sioux Falls by virtue of the legal rights of the parties, and an agreement entered into between the City of Sioux Falls and John Morrell & Company, on September 13th, 1926, and

"Whereas, the parties hereto are desirous of amending said agreemnt of September 13th, 1926, to read as follows:

"Now, Therefore, It Is Hereby Agreed that the sewage originating in the John Morrell & Company plant shall hereafter pass from the said John Morrell & Company into the sewage system of the City of Sioux Falls, through connections now established, and that whereas John Morrell & Company has installed, at its own plant, suitable dual equipment of the continuous type fine-screening, John Morrell & Company agrees that all of the sewer water that is to be delivered to the city sewer system from John Morrell & Company shall be fine-screened through said fine-screening equipment at the expense of John Morrell & Company.

"It Is Agreed, in consideration of the payments and

expenditures to be made by John Morrell & Company, as hereinafter specified, that the said John Morrell & Company may send into the sewer system of the City of Sioux Falls, and into the disposal plant of the City of Sioux Falls, all of the sewage of John Morrell & Company for a period of fifteen (15) years from and after March first, 1940.

"John Morrell & Company agrees to pay seventy-five per cent (75%) of the total cost of rehabilitation of filters in the Sioux Falls Disposal Plant, which said rehabilitation is now in progress under contract between the City of Sioux Falls and Abraham Ogdie, which said 75% of the total cost is estimated to be Eleven thousand two hundred fifty Dollars, ($11,250.00).

"Further, John Morrell & Company agrees to install degreasing equipment, in the disposal plant of the City of Sioux Falls at its own expense, which said degreasing equipment is now being installed by the Norlin Company in pursuance of a contract made between said John Morrell & Company, and the said Norlin Company, at a total estimated cost of Thirty-six hundred twenty-five dollars, ($3625.00).

"Further, John Morrell & Company agrees to pay eighty-five per cent (85%) of the total cost of purchasing and installing an equalizing tank, which said 85% of the total cost of purchasing and installing is estimated to be Ten Thousand six hundred twenty-five Dollars ($10,625.00).

"Said Morrell & Company further agrees to purchase for installation in the sewage disposal plant of the City of Sioux Falls and to deliver f. o. b. cars, Sioux Falls, South Dakota a certain gas engine-driven blower and generating equipment and appurtenances, in accordance with specifications on file in the City Engineer's Office, at a total cost of not to exceed Forty-six thousand nine hundred dollars ($46,900.00).

"It Is Agreed that all of the purchases and expenditures agreed to be made by John Morrell & Company in the four preceding paragraphs, be made in pursuance of specifications prepared by Greeley & Hansen, Hydraulic and Saniatry Engineers of Chicago, Illinois, and that said purchases and expenditures shall not exceed the aggregate sum of Seventy-thousand Six Hundred Dollars, ($70,600).

"Commencing on March first, 1943, and continuing on the first day of the months of every March, June, September and December, subsequent to the first day of March, 1943, during the term of this contract, said John Morrell & Company agrees to pay to the City of Sioux Falls, as part of the operating expense of the Sewage Disposal Plant, the sum of Twenty-five hundred Dollars ($2500.00).

"The City of Sioux Falls agrees to maintain and keep in operation the said Sewage Disposal Plant during the entire term of this Contract at its own expense, provided, however, that should improvements and betterments to said plant be required and recommended by Greeley & Hansen, Hydraulic & Sanitary Engineers of Chicago, Illinois, or some other reputable engineer agreed up between the parties, that the said John Morrell & Company agrees to pay twenty-five per cent (25%) of the cost of any new construction or betterments to the plant, provided that the said 25% of said cost shall not exceed the sum of Forty-five thousand dollars ($45,-000.00), provided further, that should mechanical replacements become necessary in the opinion of said engineers, or in the opinion of some other reputable engineer agreeable to the parties, or should the parties hereto mutually agree that mechanical replacements are necessary during the term of this contract, then and in that event, John Morrell & Company agrees to contribute fifty per cent (50%) of the yearly cost of such replacements, provided however, that the said 50% of the average yearly cost of such replacements shall not exceed the sum of Seven Hundred thirty-five Dollars ($735.00)."

It was further agreed that the parties, by agreement, might substitute a different firm of engineers.

■ (1) The first question presented by this appeal is the right of the plaintiff as a resident and taxpayer to maintain this action. In the argument and briefs the defendants and respondents assume the position that the terms of the contract between the city and the company are none of the plaintiff's business, and both strenuously assert that the validity of the contract is not involved in this litigation. We think otherwise.

■ SDC 45.0112 provides "Any citizen and taxpayer residing within a municipality may maintain an action or proceeding to prevent, by proper remedy, a violation of any provision of this title." The title referred to embraces the whole field of municipal government. By reason of this statute, a resident citizen and taxpayer is authorized to test in court any ordinance, resolution or contract executed by the municipal authorities in any case where the validity of such action is challenged. Haines v. City of Rapid City, 59 S. D. 58, 238 N. W. 145; Cralle v. American-News Co., 51 S. D. 176, 212 N. W. 913; Lang v. City of Cavalier et al., 59 N. D. 75, 228 N. W. 819.

(2) We are next confronted with the question whether, under the laws of this state, the city had the power to enter into the contract involved herein.

By SDC 45.0201, every municipality is vested with certain powers which include the power (1) to control its finances and property; (2) to levy and collect taxes for general and special purposes within the limits allowed by law; (3) to appropriate money for authorized purposes and provide for the payment of debts and expenses of the municipality; (13) to acquire by lease, purchase, or other designated means and hold in its corporate name or use and control as provided by law both real and personal property and easements and rights of way within or without the corporate limits for all purposes authorized by law or necessary to the exercise of any power granted; (19) to enact, make, amend, revise or repeal such ordinances, resolutions, and regulations as may be proper and necessary to carry into effect the powers granted to the city; (24) to exercise jurisdiction for all authorized purposes over all territory within the corporate limits (and certain other territory) for the purpose of promoting the health, safety, morals, and general welfare of the community; (34) to declare what shall constitute a nuisance and prevent, abate and remove the same; (35) to do what may be necessary or expedient for the promotion of health or the suppression of disease; (36) to compel the owner of any unwholesome or nauseous thing or place to cleanse, abate or remove the same; (37) to prevent the pollution of or injury

to any public water supply within or within one mile of the limits of the municipality; (38) to regulate and prevent the placing of garbage or any offensive matter in any body or stream of water within the municipality; (39) to control the location and regulate the management of packing houses within or within one mile of the corporate limits; (84) to establish and construct main, trunk, and service sewers, and septic or sewage treatment plants, drains and manholes; (85) to regulate and provide for the laying of water and sewer connections from the city water mains, trunk or service sewers; (89) to construct, maintain, or to authorize the construction and maintenance of sewer pipers on private property or in or along any stream of water, or to empty or discharge the sewage of the municipality into any stream of water within or without its limits if such can be done without creating any foul or noxious odors in the air over or along such stream; (90) to regulate the construction, repair and use of sewers.

The whole of Chapter 45.18 is devoted, specifically to the subject of sewer improvements by municipalities. It specifically empowers the governing board of any municipality to construct systems or parts of systems of sewerage and septic plants. By SDC 45.1811 "A municipality wherein a sewage treatment or septic plant is maintained shall have power to contract for the privilege of connecting to said plant for the purpose of treating or disposing of private sewage or industrial waste originating within one mile of the corporate limits, provided said plant has capacity over the the requirements of the municipality for handling such sewage or industrial waste." SDC 45.1811 relates only to industrial sewage originating outside of the city but within one mile of its limits.

SDC 45.1814 provides, in substance, that whenever any municipality shall have constructed a main or trunk sewer and paid for the same out of its general fund or by a bond issue, and thereafter constructs a system of service sewers and assessed the cost of the service sewers against the abutting property, the governing body may grant to the owners of abutting property the privilege of connecting to the main and to assess the benefits of such privileges against such

abutting property. The granting of the privilege of connection and the assessment of benefits must be done by resolution, and the benefits must be apportioned as provided for the original construction of service sewers. Service sewers are defined by SDC 45.1801 as those designed to carry sewage from the abutting property into the trunk or main sewer or into the sewer outlet, septic or disposal plant.

SDC 45.1817 authorizes the governing body of every municipality at the time of making its annual tax levy to levy a special assessment for the purpose of maintaining its main, trunk, or service sewers and its septic or sewage treatment plant but limits such assessment to 4¢ per front foot against the abutting property..

There is no specific provision in our statute authorizing a city to receive and dispose of or to make a charge for receiving or disposing of industrial sewage, as distinguished from sanitary sewage. In this connection the city and company, in their respective briefs repeatedly state that Morrell & Company has the same right to use the sewers and the disposal plant as does any other industrial concern, but counsel wholly refrain from pointing out the rights of any industrial user. The plaintiff asserts that an industry has no right to use the sewers at all and denies the authority of the city to grant it such a right.

The City of Sioux Falls is the largest city in this state, with a population (1940) of more than 40,000. The sewage of such a city is a large volume, and its proper disposition is an important problem. The sewage from Morrell & Company constitutes the greater part of the industrial sewage, and its disposition requires a large part of the total capacity of the disposal plant. This case involves no ordinary situation.

By the statutes hereinbefore quoted the governing body of the city is vested with the police power to preserve the public health and welfare and the proper disposition of sewage is essential to this public health and welfare. Where, as here, the statute expressly confers upon the city the power to regulate the use of sewers, and neither defines the limits of that power nor prescribes the manner of its exercise, the

city is necessarily invested with power to exercise its discretion, and the courts will not interfere with such action unless it appears to be unreasonable or arbitrary. Town of Colton v. South Dakota Central Land Co., 25 S. D. 309, 126 N. W. 507, 28 L. R. A. N. S., 122; City of Mobridge v. Brown, 39 S. D. 270, 164 N. W. 94.

■ However, the courts will always interfere to keep municipal authorities within the law and will interpose to prevent any action which is ultra vires because of some lack of antecedent legislative authority. 1 McQuillin, Municipal Corporations, 2d Ed. Rev. § 391, at p. 1087.

■■ A municipal corporation is a creature of the Constitution and statutes of the state. It possesses only such powers, great or small, as these laws give to it, together with only those incidental or implied powers as are necessary to enable it to perform designated and authorized functions. A city, as such, has no inherent powers and none of the attributes of sovereignity.

■ The policy of the law is to require of municipal corporations a reasonably strict observance of their powers. 1 McQuillin, Municipal Corporations, 2d Ed. Rev., § 368.

■■ The only privilege which a city can grant to a person or a firm within the city limits is a license or permit to make proper connection and empty sewage into the system, there to receive such treatment and disposal as the city may from time to time provide. It is not within the power of a city to guarantee that it will successfully operate a sewage disposal plant or an adequate system. If the system or disposal plant must be closed for repairs or fails for any reason to receive or adequately purify the sewage emptied into it, the city cannot be held liable for resulting damages to any person whose sewage is thereby inadequately treated or excluded. It follows that a city cannot by contract assume any such liability, or bind itself to receive and dispose of all the sewage which patrons may attempt to empty into it.

■■ The supervision and regulation of the sewers is a police function of the city. Therefore, in granting permission for the use of the sewers in the first instance and for the continuing use thereof, the city must at all times

retain control, and any attempt by way of contract to deprive the city of that control is void. The police power of the city cannot be bargained away by contract, but must at all times be available for use to meet such public needs as may arise. McQuillin, Municipal Corporations, 2d Ed. Rev., §§ 393, 1564.

Any license or permit to connect with the city sewers must necessarily at all times be contingent upon the ability of the sewage system and disposal plant to digest and dispose of the same.

No one has any vested rights in the use of the sewers, nor can the city grant such a vested right. Idem, § 1566.

If for any reason the system or plant will not handle sewage from a particular source, by reason of its nature or quantity, or if such sewage is of such character that it prevents the disposal plant from functioning, it is within the power of the city to require such sewer connection to be discontinued and it may be the duty of the city to do so. Idem. § 1566. It may be necessary for the city to do so to protect itself against possible damage suits for the creation of a nuisance.

In short, a permit or license to make a sewer connection granted by a city means only that the licensee is permitted to empty its sewage into the system so long as the system will take care of it and the city authorities permit. In the exercise of its discretion, which the courts will not interfere with unless the action is clearly unreasonable and arbitrary, the governing board of the city may grant and revoke licenses or permits as may be warranted by the capacity and ability of the sewers and disposal plant to dispose of the same, and as the public interests may require.

By the contract as amended in 1940 the city authorities undertake to grant to Morrell & Company the right to empty all of their sewage without limitation as to character or volume, into the city system for the period of 15 years. The city does not grant to an individual householder any such contract for a period of years, nor does it assume any obligation or possible liability, but merely grants the privilege of connecting to the sewers, and it is a license which

may be revoked for sufficient cause at any time. The contract purports to grant far more than is embraced in the license or permit which the city is authorized to grant. Were it valid, it might form the basis for a damage suit against the city for non-performance. It attempts to grant a vested right for the 15-year term. The city cannot assume such liabilities, nor grant such rights.

■ The mere fact that one has expended considerable money to make the connection gives him no vested right to retain the connection. 4 McQuillin, Municipal Corporations, 2d Ed. Rev., § 1566.

The contract between the city and the company seems to treat the sewage disposal plant as property subject to joint control, a sort of partnership affair, to be supervised by engineers paid by and owing allegiance to both parties. The law does not authorize such. The plant belongs to the city. The city cannot part with any of its control thereof, nor should it share the allegiance of any of its employees. The company is not compelled to use it. It may use it only by permit from the governing board of the city. If the company wishes to use the city plant, it must conform to the requirements which the governing board may lawfully impose.

■ In dealing with the city as it has in the past, beyond its authority to contract, the company acquired no rights. Williams v. City of Fargo, 63 N. D. 183, 247 N. W. 46 at 53. The city suggests in its briefs that the money it has received from John Morrell & Company may be justified as voluntary contributions. The city may accept them as such. See 38 Am. Jur. 249, § 561. It should be clearly understood, however, that any such past or future payments neither impose liability upon the city nor confer vested rights or supervisory control upon the company.

In the present state of our statutes we are compelled to hold that the amended contract of March 1, 1940 between the City of Sioux Falls and John Morrell & Company is wholly unauthorized and void.

■ We do not think that it follows as a necessary consequence that injunction must issue to restrain further use of the sewers by the defendant company. While the

contract before us did not confer the vested rights nor impose the obligations and liabilities which it sought to do, the governing board did authorize the making of the sewer connections which have now been in use for over 15 years. The very existence of the connections implies the existence of a permit, which, as we have said, can be revoked by the governing board in the exercise of its sound discretion at any time. Or, the city can grant a new permit at any time. The duty of seeing to it that the sewage originating within the city is disposed of in a proper manner rests upon the governing board. The issuance of the injunction prayed for herein might deprive the city, at least temporarily, of its power to discharge this duty. Where, as here, the injunction prayed for could be promptly nullified by the issuance of a new permit; where a discontinuance of the sewage outlet through the disposal plant, if continued in force, might either jeopardize the public health or greatly injure the public interests, we think the issuance of the requested injunction is properly denied.

In so far as the judgment below is inconsistent with this opinion, the same is reversed, but in denying injunction, is affirmed.

No costs are to be taxed in this court..

POLLEY, J., not sitting.

VAN BUREN PERRY, Circuit Judge, sitting for POLLEY, J.

All the Judges concur.