Terry Dale LINDQUIST, Plaintiff and Respondent,

v.

OMAHA REALTY, INC., et al., Defendants and Appellants.

No. 11920.

Supreme Court of South Dakota.

Argued Oct. 15, 1976.

Decided Dec. 16, 1976.

George A. Bangs of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for plaintiff and respondent.

H. R. Jackson of Lynn, Jackson, Shultz, Ireland & Lebrun, Rapid City, for defendants and appellants.

DUNN, Chief Justice.

This is a declaratory judgment action seeking to determine which of the parties is entitled to $65,000 presently in escrow. The Seventh Judicial Circuit granted relief to plaintiff. Defendants appealed. We affirm.

The facts were stipulated by the parties. On June 26, 1968, plaintiff and corporate defendant (later dissolved with assets passed to the Rypkemas, hereinafter defendants) entered an agreement leasing certain premises to plaintiff for a term of ten years. Plaintiff constructed a gas station and car wash on the premises. The lease agreement contained two provisions particularly pertinent to this suit. Under Section 9, plaintiff was given the right to purchase the premises by depositing $75,000 in escrow to be disbursed when a "Warranty Deed conveying good and merchantable title" was furnished to the bank. Section 12 provided:

"If the whole or any part of the premises hereby leased shall be taken by any public or quasi public authority under the power of eminent domain, then the term of this lease shall cease on the part so taken from the day the possession of that part shall be taken for public purposes. Lessee shall have the right either to cancel this lease and declare the same null and void, said right to be exercised by Lessee by written notice to Lessor within thirty (30) days from the date possession of that part shall be relinquished, or to continue in the possession of the remainder of the same under the terms herein provided. All damages awarded for the taking of such property under eminent domain shall belong to and be the property of the Lessor and the Lessee as their interests may appear."

On June 12, 1972, following a devastating flood, the city council of Rapid City adopted a resolution which provided:

" * * * no building permits be issued for new construction one block on either side of Rapid Creek for its entire length through the City until such time as the Planning Commission submits its findings; and that the question of reconstruction of buildings in that area be deferred pending the findings of the Planning Commission."

The property in the lease agreement lay within one block of Rapid Creek within Rapid City. On October 24, 1972, and November 1, 1972, the city and HUD, respectively, approved and funded an urban renewal project.

In a letter dated September 30, 1974, the city sent to defendants a Statement of Agency's Acquisition Process and a Notice Of Intent To Acquire the leased property. On November 1, 1974, plaintiff deposited $75,000 in escrow pursuant to Section 9 of the lease agreement and notified defendants by mail. On May 15, 1975, the city made an offer to purchase the property for $290,000 which was accepted by plaintiff and defendants. On May 29, 1975, plaintiff entered an agreement with the city to lease the premises. Plaintiff and defendants

agreed to disburse all proceeds of the sale except $65,000 which was claimed by both parties and was deposited in escrow pending an agreement or court order as to ownership.

Defendants claim that the city's restriction of construction by resolution on June 12, 1972, and its Notice Of Intent To Acquire dated September 30, 1974, constituted a taking of the property under eminent domain and terminated the lease under Section 12.

■ Under SDCL 9–29–1, municipalities are given jurisdiction "for the purpose of promoting the health, safety, morals, and general welfare of the community, and of enforcing its ordinances and resolutions relating thereto." The exercise of this police power must be reasonable. *State v. Nuss*, 1962, 79 S.D. 522, 114 N.W.2d 633; *City of Sioux Falls v. Kadinger*, 1951, 74 S.D. 217, 50 N.W.2d 797; *City of Huron v. Munson*, 1939, 67 S.D. 88, 289 N.W. 416. The city council's resolution was an attempt to freeze construction and reconstruction of lands along Rapid Creek until a comprehensive plan was developed to deal with this area. This appears to be a legitimate governmental interest when we consider the situation at the time the resolution was adopted, that is, widespread destruction and a need for some emergency action. This type of stop-gap legislation has been approved in several jurisdictions to freeze development until a comprehensive zoning ordinance or urban renewal plan is adopted. *Kingston East Realty Co. v. State Commissioner of Transportation*, 1975, 133 N.J.Super. 234, 336 A.2d 40; *Board of Supervisors of Fairfax County v. Horne*, 1975, 216 Va. 113, 215 S.E.2d 453; *State v. Superior Court of Orange County*, 1974, 12 Cal.3d 237, 115 Cal.Rptr. 497, 524 P.2d 1281; *Hunter v. Adams*, 1960, 180 Cal.App.2d 511, 4 Cal. Rptr. 776; *McCurley v. City of El Reno*, 1929, 138 Okl. 92, 280 P. 467.

We must analyze the facts of the case, balancing the city's desire to limit public expenditures and promote safety and general welfare as against the interference with defendants' property.

"[W]hether a particular governmental restriction amounted to a constitutional taking * * * [is] * * * a question properly turning upon the particular circumstances of each case." *United States v. Central Eureka Mining Co.*, 1958, 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228, 1236.

■ There has been no showing of depreciation in value because of the notice or restriction on construction. *United States v. Central Eureka Mining Co.*, supra; *Pennsylvania Coal Co. v. Mahon*, 1922, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322. Although the record does not indicate when the Planning Commission's findings were submitted, the restriction was enacted as a temporary measure. In addition, following the June resolution, negotiations were had between the city and the owners concerning the possibility of excluding the improved portion of the property, and certain capital improvements were authorized by the city. We hold that the action taken by the city council was a reasonable exercise of the police power and not a taking by eminent domain. We hold further that the Notice Of Intent To Acquire the leased property dated September 30, 1974, was not a taking under the power of eminent domain as set out in Section 12 of the lease, as possession of no part of the property passed to the public authority under this notice. Thus Section 12 of the lease agreement would be inapplicable and would not prevent the purchase of the premises under Section 9 of the lease agreement.

Affirmed.

All the Justices concur.