2001 SD 95

**CITY OF MARION, Plaintiff and Appellant,**

v.

**Diane SCHOENWALD, Defendant and Appellee.**

**No. 21587.**

Supreme Court of South Dakota.

Argued April 25, 2001.

Decided July 18, 2001.

---

Jeffrey A. Cole of Zimmer, Duncan and Cole, Parker, SD, Attorneys for plaintiff and appellant.

Ronald A. Parsons, Jr. of Johnson, Heidepreim, Miner, Marlow & Janklow, Sioux Falls, SD, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] To keep excessive numbers of large dogs from becoming a public nuisance, the City of Marion passed an ordinance that, among other things, limited households to four dogs, only two of which could weigh over 25 pounds. When the ordinance was challenged in court, the weight restriction was struck down. We reverse that ruling. South Dakota law permits municipalities broad power to regulate the keeping of dogs, and thus the weight limitation included in the City's comprehensive pet ordinance was within its authority.

**A.**

[¶ 2.] Marion city officials heard numerous complaints about dogs. The problems included constant barking, chained dogs challenging neighbors, and big dogs taking an attack attitude toward bypassers. The City attributed these problems to "large dogs" that have a greater potential to kill, injure, and intimidate. Dogs housed together, the City concluded, develop a "pack mentality" increasing their lethality. In addition, the City became concerned that excessive dog feces would create unsanitary conditions and foul odors. In 1999, the City successfully prosecuted a nuisance action against a resident who kept five Great Danes.

[¶ 3.] The City enacted Ordinance 232, effective January 5, 2000. In § 2, the ordinance "set an aggregate limit to the number of dogs that may be legally owned by one family, household, or cohabitants of any kind."[1] No home could have more than four dogs and four adult cats. Of the four dogs allowed, only two could weigh over 25 pounds.

[¶ 4.] Diane Schoenwald resides in Marion with her husband and their three children. The family owns three dogs: one shepherd-collie mix and two golden retrievers. The dogs were properly licensed and vaccinated in June 1999. At that time, the shepherd-collie weighed 75 pounds; the male golden retriever, 30 pounds; and the female golden retriever, 20 pounds. On February 23, 2000, Schoenwald was notified that by housing three dogs weighing over 25 pounds she was in violation of the ordinance.[2] The City ordered her to remove one dog. She received a second notice on March 10, giving her 72 hours to comply. She ignored the demand and was issued a citation.

[¶ 5.] Schoenwald pleaded not guilty in magistrate court and moved to dismiss. She contended that the ordinance exceeded the scope of municipal authority and was unconstitutional. After a hearing, a

1. Ordinance 232 § 2 provides:

Limit in number of dogs and cats–It shall be unlawful for any person or persons, or household, in the limits of the City of Marion to own or possess more than four dogs and four adult cats. *Of the four dogs that can be owned or possessed, only two of the dogs can weigh more than twenty-five pounds.* It is the intent of this Ordinance to set an aggregate limit to the number of dogs that may be legally owned by one family, household, or co-habitants of any kind. This Ordinance does not apply to litters of dog puppies or kittens from the time of their birth until they are eight weeks old.

2. It is not clear from the record how the City determined that Schoenwald's third dog had subsequently exceeded the weight limitation.

circuit judge sitting as a magistrate granted her dismissal motion. The court ruled that the weight restriction violated Schoenwald's substantive due process rights under Article VI, § 2 of the South Dakota Constitution and exceeded the City's authority conferred by the Legislature. We granted the City's request for discretionary review.

## B.

[¶ 6.] Lacking inherent authority, cities derive their right to regulate from the Legislature. *Welsh v. Centerville Township*, 1999 SD 73, ¶ 10, 595 N.W.2d 622, 625; *Donovan v. City of Deadwood*, 538 N.W.2d 790, 792 (S.D.1995) (citations omitted). By statute, cities are empowered to "enact, make, amend, revise, or repeal" ordinances they deem necessary to effect their authority. SDCL 9–19–3. Ordinances must remain in "reasonably strict" adherence to their statutory ambit. *Ericksen v. City of Sioux Falls*, 70 S.D. 40, 53, 14 N.W.2d 89, 95 (1944). The exercise of a police power must not be unreasonable or arbitrary. *See Lindquist v. Omaha Realty, Inc.*, 247 N.W.2d 684, 686 (S.D.1976)(discussing SDCL 9–29–1)(string citation omitted). Distinctions made by an ordinance must have a reasonable basis, and the means employed must be necessary to accomplish the asserted goal. *South Dakota Dept. of Public Safety v. Haddenham*, 339 N.W.2d 786, 790 (S.D. 1983) (citations omitted); *City of St. Paul v. Dalsin*, 245 Minn. 325, 71 N.W.2d 855, 859 (1955).

[¶ 7.] South Dakota delegates a large measure of police power to municipal corporations, either expressly or inferentially. *Streich v. Board of Ed. of Aberdeen*, 34 S.D. 169, 147 N.W. 779, 781 (S.D. 1914). Inferred powers are no less valid than those bestowed in express terms. *Id.* Local governments can best achieve the objects of their existence by the exercise of such powers. *Id.* Our Court has a history of not interfering with municipal governments unless their actions are palpably arbitrary, unreasonable, or beyond their authority. *Sanderson v. Mobridge*, 317 N.W.2d 828, 829 (S.D.1982)(deferring to municipal decision to deny moving permit because of number of trees that would have to be removed and the extent of harm trimming would cause); *Ericksen*, 70 S.D. at 53, 14 N.W.2d at 95 (city may grant and revoke sewage licenses or permits as warranted and as public interest may require); *Town of Colton v. South Dakota Cent. Land Co.*, 25 S.D. 309, 126 N.W. 507 (S.D. 1910) (upholding ordinance prohibiting livestock pens within certain district).

## C.

[¶ 8.] To decide if the Legislature authorized the City to regulate "the keeping of dogs" through a pet ordinance that includes a weight classification, we examine SDCL Chapter 9–29, and specifically 9–29–12, 9–29–13, and 9–29–1.[3] Stat-

3. SDCL 9–29–12. **Animals Running at Large—Pounds—Dog licenses.** Every municipality shall have the power to regulate or prohibit the running at large of dogs, animals, and poultry, to establish pounds, appoint poundmasters, and regulate the impounding of animals, and to impose a tax or license on dogs running at large.

SDCL 9–29–13. **Abatement of Nuisances.** Every municipality shall have power to de-clare what shall constitute a nuisance and prevent, abate, and remove the same.
SDCL 9–29–1. **Territorial Jurisdiction of Municipalities.** Every municipality shall have power to exercise jurisdiction for all authorized purposes over all territory within the corporate limits and over any public ground or park belonging to the municipality, whether within or without the corporate limits ... for the purpose of promoting the health, safety, morals, and general welfare

utory interpretation presents a question of law, and thus we review the trial court's decision without deference. *Faircloth v. Raven Industries*, 2000 SD 158, ¶ 4, 620 N.W.2d 198, 200 (citations omitted); *Welsh*, 1999 SD 73, ¶ 7, 595 N.W.2d at 624 (citations omitted). We inspect individual statutory sections along with enactments relating to the same subject. *State v. Lorenz*, 2001 SD 17, ¶ 12, 622 N.W.2d 243, 246 (citations omitted). Municipal ordinances are presumed valid, and those challenging them bear a heavy burden in proving that they are unreasonable and arbitrary. *Fortier v. City of Spearfish*, 433 N.W.2d 228, 231 (S.D.1988) (citations omitted). We also presume that cities are familiar with their local conditions and know their own needs; therefore, we will not substitute our judgment for their decisions, unless they abuse their power. *Tillo v. City of Sioux Falls*, 82 S.D. 411, 415, 147 N.W.2d 128, 130 (1966).

▆▆▆ [¶ 9.] An ordinance regulating pet weight as well as pet numbers has no linkage to an explicit legislative endorsement. Indeed, the only specific enabling statute deals with prohibiting, regulating, and licensing "dogs running at large." *See* SDCL 9–29–12. Yet this statute is no bar to other enactments for canine control: cities possess the statutory right to "regulate the keeping of dogs." *Rapid City v. Tuning*, 82 S.D. 442, 443, 147 N.W.2d 604, 605 (1967) (citations omitted). A broader power to regulate in this area stems from municipal authority to maintain the health, safety, and general welfare of the community and the right to abate nuisances. SDCL 9–29–1; 9–29–13.

These enactments denote a legislative intent to leave subjects like pet control to local government, as the more manageable societal unit for such regulation. Certainly, there are no contravening statewide laws on point. Read together, SDCL 9–29–12, 9–29–13, and 9–29–1 accord municipalities open authority in controlling pet ownership, so long as the regulations reasonably correlate with the protection of the health, safety, and welfare of local residents. SDCL 9–29–12 (prevent dogs from running at large); SDCL 9–29–13 (declare, prevent, abate, and remove nuisances); SDCL 9–29–1 (authority to exercise jurisdiction to promote welfare of the community).

[¶ 10.] In almost all jurisdictions, municipal power to regulate animals kept as pets is broadly construed. *See* 7 McQuillin, Municipal Corporations, § 24.284 at 203 (3rd ed 1998)(footnoted information omitted). Restrictions on the aggregate number of dogs in households are commonly upheld against constitutional attacks. *See Holt v. Sauk Rapids*, 559 N.W.2d 444, 445–46 (Minn.Ct.App.1997). *See also Gates v. City of Sanford*, 566 So.2d 47, 49 (Fla.Dist.Ct.App.1990)(three dogs and three cats); *Village of Carpentersville v. Fiala*, 98 Ill.App.3d 1005, 54 Ill.Dec. 521, 425 N.E.2d 33, 35 (1981), *cert. denied*, 456 U.S. 990, 102 S.Ct. 2271, 73 L.Ed.2d 1285 (two dog limit in single family residence).[4] Regulation of specific breeds is also considered a proper exercise of police power. *Singer v. City of Cincinnati*, 57 Ohio App.3d 1, 566 N.E.2d 190, 192 (1990)(banning pit bulls); *Garcia v. Village of Tijeras*, 108 N.M. 116, 767 P.2d

of the community, and enforcing its ordinances and resolutions relating thereto.

4. *Contra Commonwealth v. Creighton*, 163 Pa. Cmwlth. 68, 639 A.2d 1296 (1994)(refusing to validate ordinance limiting aggregate number of animals per household and remanding for more specific findings on the goals of the ordinance and whether the means were reasonable).

355, 360 (N.M.Ct.App.1988)(pit bulls). *See also* McQuillian, *supra* at 202.

▆ [¶ 11.] On the other hand, the City cites no instance where a similar weight restriction for dogs was upheld. Nor does it refer to any animal science authority or veterinary directive to support a weight threshold for household pets. Empirical evidence, of course, is not required to sustain an ordinance. Schoenwald, who carries the burden, offers no empirical data either. But to some degree, the weight limit creates an unproven distinction between large and small dogs. The restriction carries certain troublesome exactions. Weight is a mutable attribute. For some pets, compliance with the ordinance may fluctuate, depending on health, diet, and age.

▆ [¶ 12.] Then again, by isolating a single sentence in an ordinance to test its reasonableness, we ignore a basic rule of construction: the obligation to read enactments as a whole. *Faircloth,* 2000 SD 158, ¶ 6, 620 N.W.2d at 201 (citations omitted). A court should be cautious in dissecting piecemeal a comprehensive law. Molded in concession and compromise to reconcile opposing interests, an enactment might lose its objective and become something never intended by its drafters if parts were severed. The City believes that because it allows four dogs per household, only two of which are restricted in size, that the severity of the weight limit is ameliorated. The ordinance is an attempt to balance competing needs, public and private. If the City had simply limited households to two large dogs and two small ones, the ordinance would lack the requirement of definiteness. Distinctions between large and small would be indeterminable. Marion's limit on the number of dogs assuredly advances public welfare. *See Holt,* 559 N.W.2d at 446 (citing cases).

A maximum of four dogs per household is scarcely over restrictive. As we have said, numerous courts have upheld stricter limits. Too many dogs in one place can produce noise, odor, and other adverse conditions. *Downing v. Cook,* 69 Ohio St.2d 149, 431 N.E.2d 995, 997 (1982). If the city can lawfully restrict the number of pets per home, then it seems hardly a stretch to say that it can also limit the size of those pets—at least some of them.

[¶ 13.] On the whole, the City meets a legitimate public safety objective with its comprehensive pet ordinance. We have seen the tragic consequences of unregulated or mismanaged pets. *See e.g. Tipton v. Town of Tabor,* 1997 SD 96, 567 N.W.2d 351. Larger dogs have greater potential for harm. And the physical danger animals pose is not the only consideration. Public welfare includes maintaining a certain quality of life in a community. Unsanitary conditions, incessant barking, obnoxious animal behavior of various sorts, all can seriously disturb the peace and constitute a nuisance. The advantages of clean and quiet neighborhoods are surely creditable goals for local government. From our extensive research on similar decisions throughout the country, we think it significant that with growing urbanization over the past fifty years, courts have become increasingly deferential to local authorities in upholding diverse pet control measures.

[¶ 14.] We conclude that the weight limit in Ordinance 232 § 2 read together with the freedom to possess four dogs, two of which can be any size, is sufficiently related to the purpose of protecting public health and safety; thus, it did not unreasonably exceed the City's regulatory authority. Furthermore, because there is a rational relationship between the ordi-

nance and the problems caused by large dogs, we find no violation of the South Dakota Constitution. *Cheyenne River Sioux Tribe Tel. Auth. v. Pub. Utilities Comm'n,* 1999 SD 60, ¶ 44, 595 N.W.2d 604.

[¶ 15.]   Reversed.

[¶ 16.]   MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.