EDWARD SPRINGER *et al.*

*v.*

ARTHUR WALTERS.

*Filed at Ottawa October 31, 1891.*

1. INJUNCTION—*of injury to public and to private rights—who may maintain.* The rule is well settled in this court that a private property holder can not call upon a court of equity to enjoin an injury threatened to purely public rights.

2. A person whose property has been specially assessed for the construction of drains and pumping works of a drainage district has not such a vested right in the sewers, etc., as will enable him to claim the protection of a court of equity, by injunction, against one outside the district about to connect his premises with the sewers by drains, under permission from the corporate authorities of the district.

3. If that for which a private party has been assessed as a special benefit will be diminished materially in value, or if his private property will be otherwise materially injured by a threatened act, he will have the right to call upon a court of equity for its protection by injunction.

4. But in such case the allegation in the bill must be distinct and clear, and it must be supported by satisfactory evidence removing all substantial doubt that the threatened injury is substantial, and not merely of a trifling or nominal character.

5. DRAINAGE DISTRICT—*not a private corporation.* A drainage district in a city or village is not a private corporation. It is created solely for public purposes, for the improvement of the streets and the promotion of health.

6. SPECIAL ASSESSMENT—*species of taxation.* Under our constitution a special assessment is but a species of taxation.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

A drainage district was organized within the village of Hyde Park, in Cook county, and drains were made and maintained in certain of the village streets therein by special assessment, pursuant to ordinances of the village. After the village was annexed to the city of Chicago, Arthur Walters obtained the

license of the city to discharge the sewage from a house erected by him on a lot lying outside the drainage district, through a ditch to be cut by himself, into one of the street drains in the drainage district. Edward B. Springer and Frederick W. Green, owners of real estate and residents within the drainage district, ask, by their bill, that Walters be enjoined from connecting his ditch with and using the street drain. The circuit court, on hearing, dissolved the temporary injunction that had been ordered and decreed that the bill be dismissed, and that decree was affirmed on appeal to the Appellate Court for the First District.

Messrs. CRATTY BROS. & ASHCRAFT, Mr. JULIUS STERN, and Mr. NEWTON A. PARTRIDGE, for the appellants:

The drains in the Woodland drainage district are not public sewers of the city of Chicago. 3 Starr & Curtis, 99; *Hyde Park* v. *Spencer*, 118 Ill. 446; *Pearce* v.\*Hyde Park*, 126 id. 287.

Injunction is a proper remedy to prevent a threatened nuisance. *Anderson* v. *Henderson*, 124 Ill. 164; *Hicks* v. *Sillman*, 93 id. 255; *Dayton* v. *Drainage Comrs.* 128 id. 271; *Butler* v. *Mayer*, 74 Ga. 570; *Evans* v. *Railroad Co.* 96 N. C. 45; *Railway Co.* v. *Morrison*, 71 Ill. 616; *Gormly* v. *Sanford*, 52 id. 158; 1 High on Injunctions, sec. 740.

The license to connect with the Woodland drainage district was illegal and not *quasi* judicial. *Childs* v. *Boston*, 4 Allen, 41; *Seifert* v. *Brooklyn*, 101 N. Y. 136; *Field* v. *West Orange*, 36 N. J. Eq. 118; *Noonan* v. *Albany*, 79 N. Y. 470; *Bastable* v. *Syracuse*, 8 Hun, 587; *Beach* v. *Elmira*, 22 id. 158; Wood on Nuisance, sec. 752.

Mr. ALLAN C. STORY, for the appellee:

Resident citizens and tax-payers of a city can not, as such, either on their own behalf or on behalf of themselves and others having a like interest, maintain a suit to restrain corporate acts alleged to be illegal. 2 Dillon on Mun. Corp. sec. 929.

Therefore no such action can be maintained by one citizen against another who holds a regular license from the city, for the purpose of preventing the latter from doing the act licensed.

Mr. Justice Scholfield delivered the opinion of the Court:

The theory of complainants' bill, and of the affidavits in support of it, is, that each owner of real estate within the drainage district has a vested property right in the sewers, pumping works, etc., of the district, as to which he may claim the protection of the court of chancery, by injunction, in case of threatened injury. This is plausible, since payment for the construction and maintenance of these sewers, pumping works, etc., was made from money raised by special assessment on the real estate within the district; but a moment's examination will show that it is not sound, and that it is plausible, merely. The drainage district is not a private corporation. It is created solely for purposes of local government, and whether it shall be held to be a corporation distinct from that of the city, or only as a district for the exercise of one of the powers vested in the city, its purpose is public and not private. The drainage of the streets of the city is, primarily, for their improvement and preservation, for the conveniences of public travel, and also for the promotion of the public health, by freeing the city from the garbage and filth that must otherwise accumulate and infect the air with its germs of human diseases, although, secondarily, it is vastly beneficial to the owners of contiguous real estate. It is alone because of the sanitary benefit to the public and the improvement of the public thoroughfares to result from drainage that the city may be vested with the power of drainage, or with power to organize a district for that purpose, (see *Wilson* v. *Board of Trustees,* 133 Ill. 443,) and it is solely because of the incidental benefits to result therefrom to contiguous owners of real estate, that the cost of drainage may be taxed against

contiguous real estate by special assessment.   But the owner
of real estate has no more legal interest in a public work paid
for by special assessments on contiguous property than he has
in the same kind of a work when paid for by general taxation,
for under our constitution special assessment is but a species
of taxation.   *Adams County* v. *City of Quincy,* 130 Ill. 566.

The rule is well settled in this court that a private property
holder can not call upon a court of equity to enjoin an injury
threatened to purely public rights.   (*City of Chicago* v. *The
U. B. Association,* 102 Ill. 379 ; *McDonald* v. *English,* 85 id.
232.)   It does not lie in the mouths of appellants, therefore,
to question the act of appellee, unless they have shown that
their private property will be certainly materially injured
thereby.   Undoubtedly, if that for which they have been as-
sessed as a special benefit will be diminished materially in
value, or if their private property will be otherwise materially
injured by the threatened act, they have the right to call upon
a court of equity for its protection.   But in such case the alle-
gation must be distinct and clear, and it must be supported by
satisfactory evidence removing all substantial doubt that the
threatened injury is substantial, and not merely of a trifling
or nominal character.   High on Injunctions, (1st ed.) sec. 486,
and authorities there cited; *Oswald* v. *Wolfe,* 129 Ill. 200 ;
*Thornton·*v. *Roll,·* 118 id. 350.

There is no allegation or evidence in this record showing the
location of appellants' property with reference to the sewers
in this district, the extent and character of the improvements
thereon, and in what manner and to what extent their prop-
erty must be injured by the threatened act of appellee.   The
substance of the allegations is, simply, if appellee is allowed
to so connect the said drain and ditch which he is construct-
ing with the drain within said district, he will compel the
pumping of the same a distance of over a mile into Lake
Michigan, at great cost, and without the land so drained, or
said Walters, contributing to the same in any form, and that

such connection of said proposed drain will necessarily prevent persons who own land in said district from connecting with said sewers, and will, as complainants believe, tend to overflow and flood the sewers in said district, to the irreparable damage to the land owners and residents thereof.

Affidavits filed in support of appellee's answer show that the water pipe connections in appellee's building "consist of two pipes, each of three-fourths of an inch in diameter, and the branches connecting with the fixtures are five-eighths of an inch in diameter; that the fixtures consist of one bath-tub, one water-closet and two sinks and wash-bowl; that the average use of water by consumers is about four hours a day; that the addition of this sewage to the volume in the street sewer will be inappreciable in quantity, and cause no material increase in the cost of pumping; that said sewer has a capacity to discharge daily at least 7,500,000 gallons of sewage in twenty-four hours, and that the sewage now conducted into said sewer is not to exceed 1,500,000 gallons, or one-fifth of its capacity; that said pumping works have a capacity to take up and discharge a greater quantity of sewage than is now taken through the same, and does not employ said pumps for more than a fraction of the time that could be so employed." It is not a present danger, but one that it is apprehended will arise in the future from the admitting of drainage from without the district, when all the lots within the district shall be occupied with buildings and the sewers shall be employed to the full extent of their capacity to remove the sewage therefrom, and the street drainage, that is sought to be avoided. This is entirely too remote.

We are clearly satisfied that appellants have made no case entitling them to an injunction, and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*