Roy P. ANDERSON, in Behalf of himself and all other persons similarly situated who come and join in this action, Plaintiff and Respondent,

v.

CITY OF HANKINSON, North Dakota, a body corporate, Hankinson City Council of Hankinson, North Dakota, and Odin J. Wold, as County Auditor of Richland County, North Dakota, Defendants,

City of Hankinson, North Dakota, a body corporate, and Hankinson City Council of Hankinson, North Dakota, Appellants.

Civ. No. 8400.

Supreme Court of North Dakota.

April 3, 1968.

**834**

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for appellants.

Bayard Lewis, Wahpeton, for respondents.

EUGENE A. BURDICK, District Judge.

This is a civil action brought by the plaintiff and respondent Roy P. Anderson in behalf of himself and all other persons similarly situated,[1] as a class action against the defendants and appellants, City of Hankinson, North Dakota, a body corporate, hereinafter referred to as the City, the City Council of Hankinson, and Odin J. Wold as County Auditor of Richland County, to restrain and enjoin the defendants from:

(a) Spending any further sums of money raised by an ad valorem tax upon the taxable property of the City of Hankinson for municipal power or any other municipal utility.

(b) Budgeting any further moneys raised by an ad valorem tax against the property of the City of Hankinson to be expended for municipal utilities.

(c) Assessing, levying or extending the levy of any ad valorem tax against the taxable property of the City of Hankinson, North Dakota to pay for any indebtedness created, or which they seek to create against the general credit of said city in furtherance of municipal power or any other municipal utility.

The District Court of Richland County issued a temporary restraining order August 16, 1966, a temporary injunction October 14, 1966, and entered judgment for a permanent injunction January 26, 1967, granting the relief requested by the plaintiff. The defendants, City of Hankinson and Hankinson City Council, appealed from the judgment and demanded a trial de novo in this court.

On October 7, 1963, the City Council of Hankinson, conformable to the Revenue Bond Law Chapter 40–35, N.D.C.C., adopted a resolution of necessity in which it determined that it was "* * * necessary and expedient for the City of Hankinson to erect a new electric distribution system in the City * * * and to operate such system"; and "* * * to borrow money and issue the negotiable revenue bonds of the City in the amount of not to exceed $190,000 for the purpose of providing money * * *" for such undertaking. The resolution also directed that the question of issuing such bonds be submitted to a vote of the electors of the City as required by Section 40–35–06, N.D.C.C. The question was submitted to the electors of the City and was approved by the required majority of the qualified electors voting on the question.

---

1. Following the commencement of the action, 32 other taxpayers of the City of Hankinson joined in the action as parties plaintiff.

Thereupon, officials of the City negotiated with the R.S.R. Rural Electric Cooperative of Milnor, Central Power Cooperative of Velva, the Bureau of Reclamation of the Department of the Interior, and Otter Tail Power Company, for the purchase and delivery of electrical energy to the City. Otter Tail Power Company owns, maintains and operates an electric distribution system for the sale of electric energy at retail in the City and owns and maintains a transmission line from Forman, North Dakota, to Hankinson. Forman is 39 miles from Hankinson. The Bureau of Reclamation, R.S.R. Rural Electric Cooperative and Central Power Cooperative have electric transmission terminals at Forman, but no transmission lines to Hankinson, and all are willing to sell electric energy to the City at Forman, provided the City makes its own arrangements for wheeling the power from Forman to Hankinson.

In negotiations with Otter Tail Power Company, the City requested the Company (1) to wheel electric power supplied by another over its transmission lines from Forman to Hankinson, or (2) to provide electric energy at wholesale cost to the City. The Company declined both alternatives.

The revenue bonds proposed to be issued by the City have no market until prospective purchasers can be reasonably assured that the City has a dependable source of electric energy and that facilities are available to deliver it to the City's distribution system.

In order to implement the resolution of necessity and to render saleable the proposed revenue bonds, the City Council employed attorney Alfred A. Thompson as special counsel, effective February 13, 1965, to assist the City in obtaining a source of electrical transmission or electrical power, and specifically to compel Otter Tail Power Company to provide transmission service to the City or in the alternative to sell at wholesale electric power to the City. The City had no independent source of electric power of its own.

Acting in behalf of the City, attorney Thompson filed a complaint with the Public Service Commission of North Dakota, for the purpose of obtaining an order from the Commission requiring the respondent Otter Tail Power Company to provide wheeling service at a reasonable rate over its transmission lines extending from Forman to Hankinson.

Upon hearing this complaint, the Public Service Commission, on December 30, 1966, issued its order declining to entertain the complaint upon the ground that it lacked jurisdiction over the question, sustaining the respondent's contention that the relief sought was a matter for determination by the Federal Power Commission. No appeal was taken from this order, but there is some indication in the record that the Public Service Commission intended to take further testimony in the matter. The record also shows that the City has initiated proceedings before the Federal Power Commission seeking the same relief the City sought from the Public Service Commission. The status of these various remedial proceedings is obscure in the light of the fact that attorney Thompson construed the restraining and injunctional orders of the District Court as a prohibition against the City "from doing anything further in its search for municipal power", and as terminating his service as special counsel.

Following the approval by the voters of the resolution of necessity, the City expended from its general funds for "Feasibility Municipal Power", $1,814.63 for the year ending June 30, 1964, and $2,336.57 for the year ending June 30, 1965; budgeted $3,000.00 for the year ending June 30, 1966, and proposed a budget of $5,000.00 for the year ending June 30, 1967; all of which moneys were expended or to be expended "for the purpose of forcing Otter Tail Power Company, a corporation, either to sell to the City of Hankinson, North Dakota, power at wholesale or to wheel power from a source outside of said city to the City of Hankinson, which said city intends to purchase from another source." The plaintiff con-

tends and the trial court held that taxes, levies and expenditures and those proposed for such purposes are beyond the powers of the governing body of the City, and in particular, that they violate the provisions of Section 40–35–03, N.D.C.C.

Section 40–35–03, N.D.C.C., so far as pertinent, reads as follows:

"40–35–03. Powers of municipality.— Any municipality, in addition to the powers prescribed elsewhere by the laws of this state, shall have the power to:

1. Acquire by gift, purchase or the exercise of the right of eminent domain, property required to construct, reconstruct, improve, better, or extend any undertaking, whether wholly within or wholly without the municipality, or partially within and partially without the municipality, and easements, rights in lands, and water rights in connection therewith;

2. Operate and maintain any undertaking for its own use and for the use of public and private consumers and users within and without the territorial boundaries of the municipality;

3. Prescribe, revise, and collect rates, fees, tolls, or charges for the services, facilities, or commodities furnished by such undertaking, and in anticipation of the collection of the revenues of such undertaking, issue revenue bonds to finance in whole or in part the cost of the acquisition, construction, reconstruction, improvement, betterment, or extension of any undertaking;

4. Pledge to the punctual payment of said bonds and the interest thereon all or any part of the revenues of such undertaking, including the revenues of improvements, betterments, or extensions thereof which may be constructed or acquired subsequent to the issuance of such bonds as well as the revenues of existing systems, plants, works, instrumentalities, and properties of the un-

dertaking so improved, bettered, or extended, or of any part of such undertaking;

5. Make all contracts, execute all instruments, and do all things necessary or convenient in the exercise of the powers herein granted or in the performance of its covenants or duties or in order to secure the payment of its bonds, but no encumbrance, mortgage, or other pledge of property of the municipality shall be created by any such contract or instrument;

\* \* \* \* \* \*

8. Accept from any authorized agency of the federal government loans or grants for the planning, construction, acquisition, lease, or other provision of any undertaking, and to enter into agreements with such agency respecting such loan or grants.

No property of the municipality shall be liable to be forfeited or taken in payment of any bonds issued under this chapter, and no debt on the general credit of the municipality shall be incurred in any manner for any purpose under any provision of this chapter."

Section 40–35–02, N.D.C.C., so far as pertinent, reads as follows:

"40–35–02. 'Undertaking' defined.— The term 'undertaking,' as used in this chapter, unless a different meaning clearly appears from the context, shall mean systems, plants, works, instrumentalities, and properties used in revenue producing undertakings, or any combination of two or more of such undertakings, which are used or useful in connection with:

\* \* \* \* \* \*

3. The generation, production, transmission, and distribution of natural, artificial, or mixed gas, or electric energy, for lighting, heating, and power for public and private uses;

\* \* \* \* \* \*

together with all parts of any such undertaking and all appurtenances thereto, in-

cluding lands, easements, rights in land, water rights, contract rights, franchises, approaches, dams, reservoirs, generating stations, * * * and equipment."

The respondent contends that the moneys expended and to be expended by the City from its general funds for engineering services and special legal services in connection with the proposed undertaking violates the last sentence of Section 40–35–03, N.D.C.C. in that (1) the obligation to pay for such services constitutes the incurring of a "debt on the general credit of the municipality" and (2) such items are includable in the cost of the undertaking under the provisions of Section 40–35–05, N.D.C.C. to be paid from the proceeds of the sale of revenue bonds.

Section 40–35–05, N.D.C.C., reads as follows:

"40–35–05. Cost of undertaking—How determined.—In determining the cost of an undertaking, the governing body may include all cost and estimated cost of the issuance of the revenue bonds, all engineering, inspection, fiscal, and legal expenses, and the interest which it is estimated will accrue during the construction period and for six months thereafter on money borrowed or which it is estimated will be borrowed pursuant to this chapter."

The expenditures made and to be made by the City, to which the respondents object, were not within the purview of the Revenue Bond Law, Chapter 40–35, N.D.C.C., for the reason that the undertaking proposed and authorized was limited to the erection and operation of an electrical distribution system in the municipality and did not involve the generation, production, or transmission of electric energy. Accordingly, the expenditures in question do not in this case constitute "debt on the general credit of the municipality" within the prohibitory provision of the last clause of Section 40–35–03, N.D.C.C., and are not a part of the cost of the undertaking within the purview of Section 40–35–05, N.D.C.C.

Section 40–05–05, N.D.C.C., (before amendment in 1967) governs the expenditures under consideration. This section reads as follows:

"40–05–05. Cities and villages may contract for electrical energy or gas.— The governing body of any city or village may enter into a contract with any person, partnership, association, corporation or the United States or any department or agency thereof to provide for:

1. The furnishing of electrical energy or gas to the inhabitants of the city or village and to the city or village for all purposes; or

2. The sale to and the purchase by the city or village for a term of not to exceed ten years, of electrical energy or gas required for city or village purposes.

The making and execution of any such contract must be authorized by a resolution of the governing body adopted by a majority of the members thereof at a regularly assembled meeting of such body. Nothing contained in this section shall deprive the public service commission of any of its regulatory powers with reference to contract rates."

This general power conferred upon the City, pursuant to Section 40–05–05, N.D.C.C., (amended by Chapter 323 S.L.1967 without change of powers) necessarily includes the implied power to engage preliminary engineering services and legal services to explore the ultimate feasibility of the undertaking, and in particular the legal duty of Otter Tail Power Company, a public utility, to provide as a common carrier transmission service of other electric energy available to the City in the area or to furnish electric energy at wholesale cost to the municipality. Fradet v. City of Southwest Fargo, 79 N.D. 799, 59 N.W.2d 871; Megarry Bros. v. City of St. Thomas, 66 N.W. 2d 704 (N.D.). The official actions taken by the board in authorizing the expenditures in question from the general funds of the

City were proper exercises of this contractual power.

In considering the ultimate feasibility of the undertaking, the City deemed it appropriate to engage special counsel to explore the legal duty of Otter Tail Power Company to provide as a common carrier transmission service to the City or to furnish electric energy at wholesale cost to the City. Appellants contend, *inter alia*, that this was an abuse of discretion. Section 40-20-02, N.D.C.C., reads as follows:

"40-20-02. Assistant city attorneys—Appointment—Special counsel authorized.—With the consent and approval of the governing body of the city, the city attorney may appoint assistants to do any or all of the acts which the city attorney is required to do under this chapter, but the city attorney shall be responsible to the city for the acts of such assistants. The governing body of the city, however, may employ and pay special counsel when it deems such counsel to be necessary for the best interests of the city."

Clearly, under this section the City had express authority to employ special counsel. In view of the developments in the proceedings instituted by the special counsel in behalf of the City, the decision to appoint special counsel was clearly not an abuse of discretion. The City is entitled to have determined the unresolved legal issues presented and to pursue every remedy available to it. Whether the City will ultimately prevail is wholly beside the point. If the City is successful in its efforts either to require Otter Tail Power Company to render common carrier service or to furnish electric energy at wholesale cost to the City, the objectives of its resolution of necessity will likely be achieved. The permanent injunction, of course, effectively prevents the City from implementing its resolution and must be dissolved.

The Judgment of the District Court is reversed, the permanent injunction is dissolved, and the action is dismissed.

TEIGEN, C. J., and STRUTZ, ERICKSTAD and PAULSON, JJ., concur.

KNUDSON, J., deeming himself disqualified, did not participate; Honorable EUGENE A. BURDICK, one of the Judges of the Fifth Judicial District, sitting in his stead.