**G. E. SATROM, David C. Blair, and Walter R. Anderson, Plaintiffs and Respondents,**

**v.**

**CITY OF GRAND FORKS, a Municipal Corporation; Hugo R. Magnuson, Mayor of the City of Grand Forks and his Successors in Such Office; and A. E. Forsman, Superintendent of the Waterworks and Sewerage Departments of the City of Grand Forks, and his Successors in Office, Defendants and Appellants.**

**Civ. No. 8477.**

Supreme Court of North Dakota.

Dec. 13, 1968.

**524**

H. G. Ruemmele, Grand Forks, for plaintiffs and respondents.

Caldis & Arneson, Grand Forks, for defendants and appellants.

STRUTZ, Justice.

In this case we are confronted with the issue of whether the City of Grand Forks shall be enjoined from terminating certain water and sewer service to property located outside the city limits. The facts are not in dispute and, briefly, are as follows:

The Boeing Company had a Government contract to make certain missile installations at various sites in the Grand Forks area. Desiring to establish a temporary trailer court for the housing of its employees working on such installations, three locations outside the city limits of Grand Forks were being considered by Boeing for such site. Before a definite area for its trailer installations had been selected, a special committee appointed by the City of Grand Forks to check into the matter made its report. This report included, among other things, the following recommenda-

tions: that the City had no objection to any of the three sites being considered by Boeing for such trailer park; that the City do not annex to the city the area which finally would be selected by Boeing; that the City furnish water to the location which Boeing would finally select, at regularly established out-of-city-limits water rates on the basis of a single meter connection; that the City furnish fire and police protection to such property for the agreed sum of $7,500, payable by Boeing for a period to terminate on December 31, 1966; that in the event Boeing's employees occupied the trailers after December 31, 1966, fire and police protection should be furnished on a pro rata basis at the rate of $2,500 per year; that the City furnish garbage collection at regularly established in-city rates for single-family dwellings on a per-trailer basis, charges to be paid by Boeing; that sewerage charges at such site were to be payable by Boeing at regularly established out-of-city sewerage rates on the basis of single water-meter connections; that Boeing be authorized, at its own expense, to connect to the nearest water main, sewer main, and storm-sewer main upon payment to the City of the regularly established charges for such hookups.

These recommendations of the special committee were unanimously adopted and approved by the city council on July 24, 1963.

The site finally selected by Boeing was the one belonging to Ole A. Flaat, which was one of the three locations which Boeing had been considering and which is referred to in the report of the special committee. No contract or agreement ever was entered into between Flaat and the City, other than the resolution of the City to approve the report of its special committee recommending the Boeing Company Trailer House Program, which report was approved by the city council on July 24, 1963.

On the same day, Flaat signed and filed with the City two documents which are designated "Agreement for Out-of-Town Water Connections" and "Agreement for Out-of-Town Sewer Connections," setting forth certain conditions which Flaat would agree to if such services were extended to his property described therein. These documents state that Ole A. Flaat has applied for leave to tap the Grand Forks city water mains and to make connection to the Grand Forks sewerage system for the purpose of supplying water and sewer service to the premises described, located outside the city limits of Grand Forks, and that in consideration of his being granted permission to do so, he agrees to certain things. Among the things agreed to was that, should proceedings be commenced for inclusion of the area described within the limits of the city, or should such property be included within the city and petition be filed to have the water and sewer service extended to the area, he, Flaat, would not protest the extension of the city limits or the construction of such special improvements. Each of the two documents then concludes with the following paragraph:

"This agreement shall be construed by the courts as a covenant running with the land, and when recorded in the office of the Register of Deeds, or brought to the knowledge or notice of other persons, shall be binding upon subsequent purchasers or encumbrancers of the above described premises."

Thereafter, the Boeing Company prepared the site for the trailers and did, in fact, use the same as a site for a trailer park for its employees for a period of several years. During such time, the City furnished water and sewer service and the other services provided for in the documents which Flaat had executed and filed with the City.

In 1964, the City of Grand Forks amended its ordinances pertaining to out-of-city water connections. Such amendment contained the following provision:

"Any water connection serving property outside the corporate limits of the

City of Grand Forks on the effective date of this ordinance shall be continued. In the event that property so serviced shall refuse annexation to the City, said water service shall be terminated ninety (90) days after such refusal."

A similar amendment of the ordinance pertaining to the out-of-city sewer connections was also enacted at that time.

On January 13, 1967, Ole A. Flaat entered into a contract for deed for the sale of a portion of the property covered by such agreements to the plaintiffs, G. A. Satrom, David C. Blair, and Walter R. Anderson. Thereafter, on February 6, 1967, the city council passed a resolution by which it purported to terminate water and sewer service to this property.

The defendants contend that the so-called agreements to furnish water and sewer service to the area are not agreements or contracts at all; that they merely are applications· for water and sewer service which set forth the things which the owner of the property, Ole A. Flaat, agrees to do if his application for water and sewer service to Boeing is approved, and that they do not in any way bind the City. In other words, the City contends that it has not contracted to furnish water and sewer service to Flaat, but admits that it has furnished such service to Boeing on the property owned by Flaat, and that it has done so in the interest of national defense; that this service was to be furnished to Boeing on Flaat's property after Boeing selected the particular property owned by Flaat as the site for its trailer court.

The plaintiffs contend that the provisions of each of the documents signed by Flaat, including the furnishing of water and sewer service by the City being applied for in such documents, were, under the provisions of such agreements, contracts and covenants running with the land; that when Flaat sold a portion of the property described in such agreements to the plaintiffs, such covenants ran with the land and inured to the benefit of the plaintiffs.

On the above record, the trial court found that a contract had been entered into between the City and Flaat, under the terms of which contract the City was obliged to furnish water and sewer service to the property described; that although the so-called agreements were signed by Flaat only, and not by the City, as required by Section 40–33–14, North Dakota Century Code, both of the parties—the City of Grand Forks, on the one hand, and Flaat, or Boeing in his behalf— have carried out their obligations under the agreements and that this is sufficient for the court to find that a completed contract had been made. The offer to contract was made by Flaat, and the offer was accepted by the City in furnishing the services requested, in the view of the trial court.

The court also found that the rights of Flaat under the contract, which it found had been entered into, inured to the benefit of the plaintiffs as Flaat's successors in interest to the property described in the complaint, since the agreements between Flaat and the City specifically provided that the courts should construe such agreements as covenants running with the land and that such covenants would be binding upon subsequent purchasers and encumbrancers of the described property.

The issue facing us on this appeal is whether, on the record as set out, the City should be enjoined from terminating the water and sewer services to the property of the plaintiffs, located outside the city of Grand Forks, which services the City had furnished to Boeing.

A municipal corporation is bound by valid contracts it enters into. Rules of law which apply to contracts of a municipal corporation are the same as those affecting any other contract, and a municipal corporation is bound by a contract to the same extent that a natural person, a private corporation, or any other legal entity is bound by his or its contracts.

63 C.J.S. Municipal Corporations § 973, p. 523.

In entering into a contract, a municipal corporation must keep within the scope of its powers to contract, and it may not violate statutory restrictions which establish its power.

In North Dakota, a municipal corporation is authorized by law to sell water outside the limits of the municipality if such water can be furnished from surplus remaining after the needs of the municipality and the needs of its inhabitants have been supplied. Sec. 40–33–13, N.D.C.C. Thus, if the governing body of the municipality decides to furnish water from surplus it has, to an area outside the city limits, it shall do so by contract, which contract shall be authorized by the governing body and shall be executed by the executive officer of the City and by the city clerk. Sec. 40–33–14, N.D.C.C. This section further provides that no such contract shall be entered into at a price for water which shall discriminate against the people living within the municipality or which shall interfere with the ability of the City to provide adequate water to its inhabitants or for its own use.

The City contends that it did not contract with Flaat for water service. With this contention we agree. A careful study of the record fails to establish that a contract between Flaat and the City ever was entered into. Although the statute does permit the City to contract to furnish water, no contract for such service ever was executed by the City in accordance with the law. All that the record discloses is that the City did furnish water service to the out-of-town property of Flaat, on his application therefor. There was no attempt to comply with the requirements of Section 40–33–14, North Dakota Century Code. That statute permits the City to contract to supply surplus water to areas outside the city, and specifically stipulates how such contract may be entered into. It provides:

"If the governing body decides to furnish electricity or water outside the municipal limits, it shall be done by a contract authorized by the governing body *and executed on its part by the executive officer and the city auditor and by the customer or customers to be supplied.* * * *" (Emphasis added.)

No contract ever was executed by the executive officer or by the city auditor, and no attempt was made to comply with the above requirement. The customer did sign two documents, but those documents were in the form of applications for water and sewer service, regardless of what they were denominated.

A municipal contract must be executed in accordance with the requirements of statutes. 63 C.J.S. Municipal Corporations § 1007 c, p. 592. Where the statute expressly permits the City to contract only upon the governing body's authorization, and further provides that a contract be executed on the part of the City by its executive officer and by the city auditor, no valid contract exists where such statutory requirements have not been complied with.

Thus there was no binding contract for water service in existence because of the failure to comply with statutory requirements for the execution of such a contract. However, the City did acquiesce in extending such service, and the users thereof have some rights because of the City's conduct in the matter. There is authority that a ratification of the contract may be implied from acts done or omitted by municipal authorities. 63 C.J.S. Municipal Corporations § 1009 b(2), p. 599. But where the statute expressly fixes certain requirements for execution of a contract, we do not believe municipal officers can ignore such requirements and create an implied contract by their conduct, since municipal contracts must be executed in accordance with statutory requirements. City of Princeton v. Baker, 225 Ky. 219, 7 S.W.2d 1042 (1928). The acquiescence of the City's officers would, at best, give

to the water users a license which the City may not arbitrarily terminate, but which may be terminated for good cause. Here, the water service had been rendered in the interest of national defense. As soon as the specific purpose for which it had been granted no longer exists, the City will have good cause to terminate the service.

We next will consider the plaintiffs' contention that the City contracted to furnish Flaat with sewer service. A city is granted the power to construct and maintain a sewerage system within its corporate limits. Sec. 40-05-01(23), N.D.C.C. There is further statutory authority for a city to own, acquire, construct, equip, extend, operate, and maintain, within or without its corporate limits, such sewerage system. Sec. 40-34-01, N.D.C.C. This latter section permits the city to maintain such system beyond the corporate limits so that it may dispose of the city's waste. However, there is no statutory authority for a city to furnish sewer service to areas outside the corporate limits of the city, as there is for the city to furnish surplus water beyond its limits. So, if the city does have such power, it must be found to exist even though no express statutory authority is given to it.

Earlier decisions held that when authorization was granted to a municipality to own and operate a utility, such authorization did not, in the absence of statutory authority, grant to the municipality the power to furnish such service beyond its corporate limits. However, recent decisions have laid down a more liberal rule by holding that a municipality, under its general powers to own and operate a utility, has the power to furnish service to customers without, as well as within, its corporate limits. Charles S. Rhyne, "Municipal Law," Sec. 13-9, p. 319 (1957).

 Since our statute expressly authorizes a city to own, operate, and maintain a sewerage system, the right of the city to regulate and control the use of its sewers would be a necessary incident of such ownership. 64 C.J.S. Municipal Corporations, § 1805 a, p. 265. Such regulation and control would require an exercise of discretion on the part of the city, and courts will not interfere with the exercise of this discretion unless it appears to be unreasonable or arbitrary.

 Unless prohibited by law, a municipal corporation may permit appropriate use to be made of its sewers. Springer v. Walters, 139 Ill. 419, 28 N.E. 761. But such use of the sewers, even by one within the corporate limits, has been held to be only a license [Ericksen v. City of Sioux Falls, 70 S.D. 40, 14 N.W.2d 89 (1944)]; and unless the city's action is unreasonable or arbitrary, the courts will not interfere with the control of its sewers by the city.

 As has already been pointed out herein, there is no statute expressly authorizing the City to furnish sewer service to areas outside the city limits. But, as Rhyne points out in his book "Municipal Law," the trend of recent decisions is to adopt a more liberal rule and permit a municipality, under its general powers, to furnish service to customers outside as well as within its corporate limits. This court recently has held that general powers conferred upon a city to contract for electrical energy necessarily include implied powers, such as the power to engage engineering and legal services to explore the feasibility of such undertaking. Anderson v. City of Hankinson, 157 N.W.2d 833 (N. D.1968). Thus, where the City is given express authority to furnish water outside the city under certain circumstances, it follows that the City, by implication, has the power to furnish sewer service to such areas outside the city. And, since the furnishing of sewer service within the city limits has been held to grant only a license to users, the power to furnish such service to users outside the city will be held to be no greater. Moreover, since persons receiving sewer service outside the limits of

the city have only a license to use such sewers—which in this case was granted in the interest of national defense—any action of the City revoking such license after the defense project has been completed would not be arbitrary or unreasonable.

There is evidence in the record that, at the time of trial, some phase of the defense project still was being carried on. That being true, any action of the City discontinuing the service before the termination of such project perhaps would be arbitrary and unreasonable.

Certain other specifications of error are urged by the appellants. What we have said above, however, makes it unnecessary for us to review the remaining specifications.

For reasons stated herein, the judgment is reversed and the case is remanded to the trial court for a determination of whether Boeing still is using the facilities to which the water and sewer connections are made, in the interests of national defense. A determination of that issue will be decisive of whether the City has good cause to terminate the connections, it being our view that if the facilities no longer are being used for national defense, the City has good cause to terminate such connections.

ERICKSTAD and PAULSON, JJ., concur.

TEIGEN, Chief Justice (concurring specially).

I agree with the majority that no contract exists under Section 40–33–13, North Dakota Century Code, authorizing the City to extend its water facilities to the trailer park area located outside the municipal limits. I believe Section 40–33–13, supra, was enacted to permit a city, under conditions outlined in the statute, to extend its physical water plant facilities beyond the city limits under a contract as provided in Section 40–33–14, North Dakota Century Code. In the instant case the City has not extended its physical water plant facilities beyond its municipal limits; it merely has permitted the owners of the area adjacent to the city to connect to the city water system within the municipal limits of the city. The owners of the adjacent property constructed their own water system by laying underground mains and service pipes to serve the trailers located in the trailer court. This was a private water system which secured its water supply from the City after the City permitted a single connection to the city water system under a metering device, which connection was made within the city limits. The same situation exists as to the sewer service. The owners of the adjacent area also constructed the sewerage system; thus it was a private sewerage system operated under an arrangement with the City whereby the owners of the private sewerage system were permitted to connect their main sewer to the city sewerage system to allow a discharge of the sewage it gathered into the city system. The connection was made within the municipal limits. The City did not extend its physical sewerage facilities beyond its municipal limits.

It is apparent that the city water plant and the city sewerage system are of more than sufficient capacity to provide for the needs of the city's inhabitants and the surplus capacity is being sold by the City to the plaintiffs who are located outside of its limits. For these reasons I believe the plaintiffs are governed by the same laws that govern the inhabitants of the city who use the city's water and sewerage facilities. The grant by the City of the privilege of connecting with its water and sewerage facilities is merely a license and may be revoked for sufficient cause at any time. Therefore, unless the City's action is unreasonable or arbitrary, the courts will not interfere with the City's control thereof as it is the owner of its utilities. The record is clear in this case that the grant of permission for the purchase of the city's water and the use of the city's sewerage facilities was temporary and in the interest of

the national defense project being constructed by Boeing; that any action of the City, in revoking such permission after the defense project has been completed, would not be arbitrary and unreasonable. For these reasons I concur with the majority.

KNUDSON, Judge (concurring specially).

Municipal corporations possess only those powers expressly granted, those necessarily implied in, or incident to, powers expressly granted, and those indispensable to declared objects and purposes of the corporation. Hoffman v. City of Minot, N. D., 77 N.W. 2d 815, 58 A.L.R.2d 1338, and cases cited therein.

Section 130 of the North Dakota Constitution directs the legislative assembly to provide by the general law for the organization of municipal corporations. These municipal corporations when created pursuant to statute become agencies of the state and have only the powers expressly conferred upon them by the legislature, or such as may be necessarily implied from the powers expressly granted. Megarry Bros. v. City of St. Thomas, N. D., 66 N.W.2d 704, 709 (1954).

Cities in North Dakota have been granted the authority to establish and maintain a system of waterworks, N.D.C.C. § 40–05–01 (36); § 40–05–01(59); § 40–05–02(17); § 40–05–02(18); § 40–05–02(19). And under the provisions of N.D.C.C. ch. 40–22 cities may defray the expense of the construction of a water supply system, or a sewerage system, or both, by special assessments. And under N.D.C.C. § 40–33–01:

Any municipality may purchase, erect, construct, operate, maintain, enlarge, improve and extend * * *

5. Any waterworks, mains, and water distribution system and any equipment or appliances connected therewith;

The municipality is also authorized to sell surplus water outside of municipal limits under the provisions of N.D.C.C. § 40–33–13 and § 40–33–14, which read as follows:

Whenever the governing body shall shall deem it advisable, a municipality owning and operating its own electric lighting system or waterworks may enter into contracts with persons or corporations maintaining manufacturing plants, residences, or other buildings outside of the municipal limits, to furnish such plants or buildings with electricity or water if it can be furnished from the surplus remaining after supplying the needs of the municipality and its inhabitants.

N.D.C.C. § 40–33–13.

If the governing body decides to furnish electricity or water outside the municipal limits, it shall be done by a contract authorized by the governing body and executed on its part by the executive officer and the city auditor and by the customer or customers to be supplied. No such contract shall be authorized or entered into at any rate or price for electricity or water which shall discriminate against the inhabitants of the municipality, or which shall impose any direct tax burden upon the taxable property in the municipality, or in such amount as will interfere with the ability of the municipality to provide adequate electricity or water for its own use and the use of the inhabitants thereof.

N.D.C.C. § 40–33–14.

In this case, the City has not complied with the provisions of these statutes requiring the governing body to authorize the contract and that it be executed by its mayor and city auditor and by the customer or customers to be supplied. Here, the "agreement" has been signed by the customer only, it has not been signed by the officers of the City, although there is a record of the City having authorized this "agreement" in the minutes of its proceedings.

However, the City proceeded to furnish water to the property of the purchaser under the terms of the "agreement."

In Grand Forks County v. City of Grand Forks, 123 N.W.2d 42, 45 (N.D.1963), we said:

The rule is well settled in most jurisdictions that a municipality or other political subdivision may become obligated on an implied contract to pay the reasonable value of benefits which it receives, accepts, and appropriates, where the municipality has the power to contract for such benefits. 38 Am.Jur., "Municipal Corporations," Sec. 515, p. 193; 84 A. L.R., p. 937.

And in Township of Noble v. Aasen, 8 N.D. 77, 76 N.W. 990, Syllabus 3, (1898), we held that:

When township officers, acting colore officii, perform an act which is entirely within the scope and power of the township to perform, but perform the same in an improper and unlawful manner, such act is, nevertheless, the act of the township.

And we also said in Grand Forks County v. City of Grand Forks, supra, 123 N.W.2d at 46, that:

In other words, where a municipality has the power to enter into an obligation and is not prohibited from creating a liability in any but a specified way, it may be held liable on an implied agreement, upon the principle of unjust enrichment for services rendered and for goods furnished. Shulse v. City of Mayville, 223 Wis. 624, 271 N.W. 643.

And we also said in Grand Forks County v. City of Grand Forks, supra, 123 N.W.2d at 46:

Where a municipality has the power to contract but there is a defect in the manner of exercising that power, the municipality is liable for benefits received and retained. City of Shidler v. H. C. Speer & Sons Co., 62 F.2d 544 (10th Cir.); Western Chemical Co. v. Board of Commissioners of Lancaster County, 130 Neb. 550, 264 N.W. 699.

I am thus of the opinion that the City of Grand Forks and Mr. Flaat entered into an implied contract for the furnishing of water to his property.

However, I am of the opinion that the City may terminate the contract at any time upon reasonable notice as the contract does not fix a definite time for the termination of the contract nor does the contract state that it was to continue for any specified time.

Unless it might be said that the clause in the contract that "this agreement shall be construed by the courts as a covenant running with the land, * * *" would be construed as a provision in the contract fixing the time the contract was to run. I do not believe that this clause can be so construed to fix a definite time. A covenant runs with the land only when such land is conveyed to or by the covenantor. "The covenant of a stranger to the title is incapable of transmission by a mere conveyance of the land." 21 C.J.S. Covenants § 58, p. 925.

I can find no provision in the contract of a contractual nature upon which can be based a determination that the contract was for any specified term.

As was said in City of Milwaukee v. City of West Allis, 217 Wis. 614, 258 N.W. 851, 852, 259 N.W. 724:

It is a well-established principle of law that, where no definite term is fixed and the contract is indefinite in that regard, either party may terminate it upon a reasonable notice. 4 Page on Contracts, par. 2098.

It follows that the City has the right to terminate the contract for the furnishing of

water at any time upon reasonable notice given to the owner of the Flaat tract.

I would reverse the judgment of the district court and remand the case for the purpose of determining a reasonable time for the termination of the contract to furnish water to become effective.

As to the threat to discontinue the sewer service to the property of the plaintiffs, the City is within its rights to discontinue such service. A city is granted power to construct and maintain a sewer system only within the corporate limits. N.D.C.C. § 40–05–01(23). There is no statutory authority for the city to furnish sewerage service outside of its corporate limits, or outside of the sewer district. The connection of the sewer system to the property of the plaintiffs is without authority of law. Reed v. City of Langdon, 78 N.D. 991, 54 N.W.2d 148.

The majority says that the right to grant sewerage service outside the city limits may be implied from the grant to furnish water outside of the city limits. But can it be said that out of the authority granted to the cities to construct and maintain a water system that there necessarily follows the implication that a sewer system may be constructed and operated under the same authority, especially outside of the city limits? I do not think that this is a correct interpretation of the implied powers which a city may exercise. The rule is that the city has only such implied powers as are reasonably necessary to enable it to exercise and perform those powers and duties which are expressly granted to and imposed upon it. Murphy v. Swanson, 50 N.D. 788, 198 N.W. 116, 119, 32 A.L.R. 82 (1924).

I would reverse the judgment enjoining the City from terminating the sewer service to the Flaat property.