WILLIAMS BROTHERS PIPE LINE COM-
PANY, a corporation, Plaintiff
and Appellant,

v.

The CITY OF GRAND FORKS, a municipal
corporation, Defendant and Respondent.

No. 8501.

Supreme Court of North Dakota.

Dec. 13, 1968.

Shaft, Benson, Shaft & McConn, Grand Forks, for appellant.

Caldis & Arneson, Grand Forks, for respondent.

ERICKSTAD, Judge.

By a decision rendered April 27, 1966, this court ordered the District Court of Grand Forks County to grant to Great Lakes Pipe Line Company a writ of mandamus commanding the City of Grand Forks to exclude the company's property, which is now owned by the plaintiff, Williams Brothers Pipe Line Company, from the municipality. Great Lakes Pipe Line Co. v. City of Grand Forks, 142 N.W.2d 126 (N.D.1966).

Complying with that decision, the City of Grand Forks adopted Ordinance No. 1257, excluding the Great Lakes Pipe Line Company property from the City of Grand Forks, the second reading and final passage of that ordinance being on August 15, 1966.

We shall hereafter refer to Great Lakes Pipe Line Company as Great Lakes; to Williams Brothers Pipe Line Company as Williams Brothers; and to the City of Grand Forks as the City.

On January 6, 1964, the City enacted two ordinances upon which it now relies as giving it the power to terminate water and sewer services to Williams Brothers. Ordinance No. 1132, regulating the connection of city sewer services outside the corporate limits of the city, provided that no such service should be connected to the systems of the city. Section 2B of the ordinance provided an exception for existing connections:

Any sewer connection serving property outside the corporate limits of the City of Grand Forks, on the effective date of this ordinance shall be continued. In the event that property so served shall refuse annexation to the City, said sewer service shall be terminated ninety (90) days after such refusal.

Ordinance No. 1133, relating to city water services outside the corporate limits of the city, was of the same effect as Ordinance No. 1132 and contained a similar exception.

By letter dated September 6, 1966, the City, through its mayor, directed the superintendent of its waterworks department to terminate water and sewer services to the property as of November 13, 1966. A carbon copy of this letter was mailed to Great Lakes. As that company had conveyed the property to Williams Brothers, the latter sought a temporary order restraining the City from terminating those services, pending a determination of its application for a permanent injunction. On November 10, 1966, the district court issued a temporary restraining order.

Before the hearing on the merits of the amended complaint of Williams Brothers, which asked for a permanent injunction, the City, through its deputy city auditor, by letter dated April 6, 1967, requested Williams Brothers in effect to annex its property or suffer a severance of the sewer and water services. That letter contained the following statement:

The City Council of Grand Forks will meet April 17, 1967 at 7:30 P.M. and

will expect a response to this request, otherwise, it can only determine that any failure to so respond constitutes your refusal of annexation to the City of Grand Forks, North Dakota.

No response to this letter was made unless it could be said that Williams Brothers' bringing on for hearing of its complaint for an injunction was a refusal to accede to the request. In our view there is no question 'but' that Williams Brothers refused annexation to the city.

Upon a consideration of Williams Brothers' complaint the district court found that Williams Brothers was not entitled to a judgment enjoining the City from terminating the water and sewer services and accordingly ordered that a judgment be entered to that effect through its findings of fact, conclusions of law, and order for judgment dated May 1, 1968. Judgment thereon was entered on May 1, 1968.

When Williams Brothers later filed its motion asking that the temporary injunction be permitted to remain in effect pending an appeal to the Supreme Court and further moved that the court make an order determining the point of cutoff of the sewer services, the court entered its order on May 22, 1968, which in effect continued the temporary injunction pending appeal from the judgment and a determination of the issues in this court. In the same order the court declined to designate the point of cutoff of the sewer services.

Williams Brothers appeals from the judgment of May 1 and the order of May 22 and demands a trial de novo in this court. It relies on a number of documents in support of its contention that it is entitled to an injunction permanently enjoining the City from terminating sewer and water services to its property.

The first two documents, entitled "Agreement for Out-of-Town Water Connections" and "Agreement for Out-of-Town Sewer Connections," except for that

part of each which relates to not protesting against the extension of the city limits, are almost identical to the similarly denominated documents that are part of the record in Satrom v. City of Grand Forks, 163 N.W.2d 522, a decision rendered July 3, 1968, and revised December 13, 1968.

In *Satrom,* a Mr. Flaat, who formerly owned property outside the city of Grand Forks, executed similar documents for sewer and water connections. Mr. Flaat's land, which was used as a trailer park, was subsequently sold to Mr. Satrom and his associates, and thereafter the City passed a resolution terminating the water and sewer services to the property. In refusing to enjoin the City from terminating those services, this court found that the so-called agreements were not contracts but were in fact merely licenses which could be revoked by the City at any time for good cause.

Speaking on behalf of the majority of the Court, Judge Strutz said:

The City contends that it did not contract with Flaat for water service. With this contention we agree. A careful study of the record fails to establish that a contract between Flaat and the City ever was entered into. Although the statute does permit the City to contract to furnish water, no contract for such service ever was executed by the City in accordance with the law. All that the record discloses is that the City did furnish water service to the out-of-town property of Flaat, on his application therefor. There was no attempt to comply with the requirements of Section 40–33–14, North Dakota Century Code. That statute permits the City to contract to supply surplus water to areas outside the city, and specifically stipulates how such contract may be entered into. It provides:

"If the governing body decides to furnish electricity or water outside the municipal limits, it shall be done by a contract authorized by the governing body *and executed on its part by the executive officer and the city auditor and by the customer or customers to be supplied. * * *"* (Emphasis added [by the Court in *Satrom*].)

No contract ever was executed by the executive officer or by the city auditor, and no attempt was made to comply with the above requirement. The customer did sign two documents, but those documents were in the form of applications for water and sewer service, regardless of what they were denominated.

A municipal contract must be executed in accordance with the requirements of statutes. 63 C.J.S. Municipal Corporations Sec. 1007–c, p. 592 [(1950)]. Where the statute expressly permits the City to contract only upon the governing body's authorization, and further provides that a contract be executed on the part of the City by its executive officer and by the city auditor, no valid contract exists where such statutory requirements have not been complied with.

Thus there was no binding contract for water service in existence because of the failure to comply with statutory requirements for the execution of such a contract. However, the City did acquiesce in extending such service, and the users thereof have some rights because of the City's conduct in the matter. There is authority that a ratification of the contract may be implied from acts done or omitted by municipal authorities. 63 C.J.S. Municipal Corporations § 1009–b(2), p. 599 [(1950)]. But where the statute expressly fixes certain requirements for execution of a contract, we do not believe municipal officers can ignore such requirements and create an implied contract by their conduct, since municipal contracts must be executed in accordance with statutory requirements. City of Princeton v. Baker, 225 Ky. 219, 7 S.W.2d 1042 (1928). The acquiescence of the City's officers would, at best, give to the water users a license which the City may not arbitrarily terminate, but which may be terminated for good cause. Here, the water service had been rendered in the

interest of national defense. As soon as the specific purpose for which it had been granted no longer exists, the City will have good cause to terminate the service.

We next will consider the plaintiffs' contention that the City contracted to furnish Flaat with sewer service. A city is granted the power to construct and maintain a sewerage system within its corporate limits. Sec. 40–05–01(23), N.D.C.C. There is further statutory authority for a city to own, acquire, construct, equip, extend, operate, and maintain, within or without its corporate limits, such sewerage system. Sec. 40–34–01, N.D.C.C. This latter section permits the city to maintain such system beyond the corporate limits so that it may dispose of the city's waste. However, there is no statutory authority for a city to furnish sewer service to areas outside the corporate limits of the city, as there is for the city to furnish surplus water beyond its limits. So, if the city does have such power, it must be found to exist even though no express statutory authority is given to it.

Earlier decisions held that when authorization was granted to a municipality to own and operate a utility, such authorization did not, in the absence of statutory authority, grant to the municipality the power to furnish such service beyond its corporate limits. However, recent decisions have laid down a more liberal rule by holding that a municipality, under its general powers to own and operate a utility, has the power to furnish service to customers without, as well as within, its corporate limits. Charles S. Rhyne, "Municipal Law," Sec. 13–9, p. 319 (1957).

Since our statute expressly authorizes a city to own, operate, and maintain a sewerage system, the right of the city to regulate and control the use of its sewers would be a necessary incident of such ownership. 64 C.J.S. Municipal Corporations Sec. 1805–a, p. 265 [(1950)]. Such regulation and control would require an exercise of discretion on the part of the city, and courts will not interfere with the exercise of this discretion unless it appears to be unreasonable or arbitrary.

Unless prohibited by law, a municipal corporation may permit appropriate use to be made of its sewers. Springer v. Walters, 139 Ill. 419, 28 N.E. 761. But such use of the sewers, even by one within the corporate limits, has been held to be only a license [Ericksen v. City of Sioux Falls, 70 S.D. 40, 14 N.W.2d 89 (1944)]; and unless the city's action is unreasonable or arbitrary, the courts will not interfere with the control of its sewers by the city.

As has already been pointed out herein, there is no statute expressly authorizing the City to furnish sewer service to areas outside the city limits. But, as Rhyne points out in his book "Municipal Law," the trend of recent decisions is to adopt a more liberal rule and permit a municipality, under its general powers, to furnish service to customers outside as well as within its corporate limits. This court recently has held that general powers conferred upon a city to contract for electrical energy necessarily includes implied powers, such as the power to engage engineering and legal services to explore the feasibility of such undertaking. Anderson v. City of Hankinson, 157 N.W.2d 833 (N.D.1968). Thus, where the City is given express authority to furnish water outside the city under certain circumstances, it follows that the City, by implication, has the power to furnish sewer service to such areas outside the city. And, since the furnishing of sewer service within the city limits has been held to grant only a license to users, the power to furnish such service to users outside the city will be held to be no greater. Moreover, since persons receiving sewer service outside the limits of the city have only a license to use such sewers—which in this case was granted in the interest of national defense—any action of the City revoking such license after the defense project has been completed would not be arbitrary or unreasonable.

Satrom v. City of Grand Forks, 163 N.W.2d 522 (N.D.1968).

■ Therefore, on the basis of *Satrom,* the documents denominated "Agreement for Out-of-Town Water Connections" and "Agreement for Out-of-Town Sewer Connections" in this case were merely licenses which the City has the power to revoke at any time on a showing of good cause. In light of the need for cities to extend their boundaries as adjacent areas develop, the refusal on the part of Williams Brothers to annex its property to the city pursuant to notice given it under Ordinances No. 1132 and 1133 constituted good cause for the City to terminate its licenses; and this would have justified the termination of the water and sewer services were it not for other aspects of this case which distinguish it from *Satrom.*

In this case, in addition to the so-called agreements which were executed by Great Lakes, there was entered into on June 11, 1948, by the City as first party, Great Lakes as second party, and Northern Pacific Railway Company (hereafter referred to as Northern Pacific) as third party, an agreement to share the construction costs of a ten-inch water main outside the city of Grand Forks to serve the second and third parties and other consumers along the line. The pertinent part of that agreement reads:

> The watermain herein provided for shall at all times be and remain the property of FIRST PARTY, and SECOND and THIRD PARTIES shall at no time have any right, title, or interest therein, but the SECOND and THIRD PARTIES, their tenants and assigns, shall have the right to and be given water service through said watermain so long as the same shall remain usable, upon the same terms and conditions as other out-of-town users are given water service by the City * * *.

On July 6, 1948, Great Lakes and Northern Pacific petitioned the City for permission to construct a sewer to be connected to the city sewer and to deposit sewage into the city sewer system. This petition followed the approval by the city council of a recommendation of a committee that the petition be granted. The record discloses that the water and sewer mains were constructed, that the sewer main was connected to the city sewer system, and that water and sewer services were rendered to Great Lakes and Northern Pacific for many years before the adoption of Ordinances Nos. 1132 and 1133. For these reasons Williams Brothers believes that it is entitled to continue to receive water and sewer services notwithstanding its refusal to become annexed to the city of Grand Forks pursuant to notice under those ordinances.

It is apparent from what we have said in *Satrom* and restated in this case that Williams Brothers had no more than a license to receive sewer and water services through the so-called agreements for out-of-town sewer and water connections. It is for us now to determine whether the additional agreement for the construction and use of the water main, which was executed properly by the City, through its executive officer and its auditor, together with the other features which are in this case but are not in *Satrom,* gives Williams Brothers a right in this case to an injunction preventing the City from terminating its water and sewer services.

■ Simply stated, it is our view that the agreement to share in the costs of the construction and in the use of the water main is limited by N.D.C.C. § 40–05–01(57), which reads:

> 40–05–01. Powers of all municipalities.—The governing body of a municipality shall have the power:

> 57. Franchises. To grant franchises or privileges to persons, associations, or corporations, any such franchise, except where given to a railroad company, to extend for a period of not to exceed twenty years, and to regulate the use of the same, franchises grant-

**522**

ed pursuant to the provisions of this title not to be exclusive or irrevocable but subject to the regulatory powers of the governing body; * * *.

North Dakota Century Code.

Williams Brothers contends that the statute makes a distinction between a *franchise* and a *privilege,* and that it limits only franchises, not privileges, to twenty years. Contending that it enjoys a privilege, not a franchise, it argues that the statute does not apply to it. With this view we do not agree. It is our view that the legislature used the words interchangeably. Black's Law Dictionary (4th ed. 1957) defines *franchise* as "A special privilege conferred by government on individual or corporation, and which does not belong to citizens of country generally of common right," and *privilege* as "A particular and peculiar benefit or advantage enjoyed by a person, company, or class, beyond the common advantages of other citizens. An exceptional or extraordinary power or exemption. A right, power, franchise, or immunity held by a person or class, against or beyond the course of the law."

As the water service to the premises was authorized to commence on June 11, 1948, the twenty-year period has expired, and accordingly there is no right in Williams Brothers to continue to receive water service. Taking this view, we find it unnecessary to determine the effect of the ordinance on the agreement.

Having held in *Satrom* that a right to connect to the city sewer system is only a license which is terminable for cause, and being of the opinion that good cause has been shown in the instant case, we hold that the City's action in terminating the sewer connections was proper.

The judgment of the trial court denying the injunction is therefore affirmed.

We find no legal basis for reversing the order of the trial court which refused to determine where the sewer cutoff should be made. The order of the trial court is therefore affirmed.

TEIGEN, C. J., and STRUTZ and PAULSON, JJ., concur.

KNUDSON, Judge.

I concur in the result for the reasons stated in my special concurrence in Satrom et al v. City of Grand Forks et al, 163 N.W. 2d 522.