WASHTENAW COUNTY HEALTH DEPARTMENT v T & M
CHEVROLET, INC

WASHTENAW COUNTY HEALTH DEPARTMENT v FEEMAN

Docket Nos. 61436, 61437. Decided July 12, 1979. On application by
plaintiff and defendant Pittsfield Township for leave to appeal
the Supreme Court, in lieu of granting leave to appeal, reversed
the judgment of the Court of Appeals.

Washtenaw County Health Department brought an action for an
order to abate the health hazard caused by malfunctioning
septic tanks on property on Michigan Avenue in Pittsfield
Township owned by T & M Chevrolet, Inc., and Gerald and
Debra Feeman (Lyle Wheel & Axle Service). The septic tanks
were discharging raw sewage into a county drain and the
plaintiff health department sought an order requiring the
defendants to connect to the portion of the City of Saline's
sewer system which is located under Michigan Avenue in front
of the defendants' property. Pittsfield Township and the City of
Saline were joined as third parties defendant and the city
argued at a show cause hearing that it would not approve the
defendants' connections to its sewer system unless the property
was annexed to the city. The Washtenaw Circuit Court, Ross
W. Campbell, J., after the Pittsfield Township Board resolved
that the defendants should connect to the city system, ordered
Saline to permit the hookups subject to certain conditions,
including permission for the city to charge more than the rate
it charged city property owners for sewage service. The Court
of Appeals, D. E. Holbrook, Jr., P.J., and Allen and D. R.
Freeman, JJ., reversed on the ground that the circuit court
misconstrued the statute concerning connection to public sani-
tary sewer systems as meaning that the City of Saline must
provide sewer service to property located in Pittsfield Township
if the township demands it (Docket Nos. 29033, 29034). Plaintiff
and third-party defendant Pittsfield Township apply for leave
to appeal. *Held:*

1. A fair reading of the statute in its entirety clearly indi-
cates that the Legislature never intended the requirement to
connect with a sewer system to be used by a citizen from one
municipality, or the municipality itself, to compel another

municipality to provide extraterritorial sewer service. In this case, because the defendants' structures are outside the limits of Saline, Saline could not require them to connect to its sewer system. Further, because the sewer system was owned and operated by Saline, Pittsfield Township could not require the hookup.

2. The legislation authorizes a municipal corporation to require that its citizens cease operation of the potentially hazardous septic tank method of disposing of sewage and connect to its public sewer system. The statute provides a method for this case: Pittsfield Township must require the connections of the defendants' structures to the Saline sewer system, and both Saline and Pittsfield Township must approve them.

3. Permission to connect to a municipal sewer is within the municipal authority's discretion and will not be controlled by mandamus unless the discretion is arbitrarily and unreasonably exercised. The sole reason Saline gives for its refusal to allow the sewer connections is that the defendants' property is not within the city limits. In determining whether or not Saline acted reasonably in refusing to approve the connections, it is necessary to balance the competing interests.

4. Conservation of this state's water resources as well as the promotion of public health in general are matters of paramount public concern. Sewage disposal is entwined with public health and water conservation matters and is in itself a matter of prime public concern. In construing the applicable law the courts will look to the spirit as well as the letter of the law. The statute makes it quite evident that the Legislature was concerned with the health hazards posed by septic tank systems. To correct situations such as this case requires intergovernmental cooperation. The use of the existing pipeline to correct a public health hazard when the pipeline abuts the property is both necessary and appropriate under the facts of this case. What is most important is that the use of the Saline sewer system will abate a public health hazard.

5. Saline may not arbitrarily and unreasonably refuse the connections under the facts of this case. Further, Pittsfield Township could not condition approval of the connections on Saline's annexing the property. When, as here, an available sewer line crosses municipal boundaries, the municipality operating the sewer system may not condition connection to abate a public health hazard on annexation of the property involved.

Reversed and the judgment of the circuit court is reinstated.

*Eliot G. Striar,* Assistant Corporation Counsel, for plaintiff.

*Reading & Etter* for third-party defendant Pittsfield Township.

*Allan W. Grossman* for third-party defendant City of Saline.

PER CURIAM. The issue is whether the Washtenaw Circuit Court reversibly erred in ordering the City of Saline to permit hookups of structures located outside the city's corporate limits to an available Saline sewer system when the structures' defective septic tanks were causing raw sewage to flow into a Washtenaw County drain resulting in a public health hazard.

The Court of Appeals determined that the circuit court erred. Since we believe that the circuit court reached the correct result for the wrong reason,[1] pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

# I

T & M Chevrolet, Inc., and Gerald and Debra Feeman, doing business as Lyle Wheel & Axle Service ("Lyle" below), owned property abutting Michigan Avenue in Pittsfield Township, Washtenaw County. The septic tanks located on T & M and Lyle's property were malfunctioning and resulted in raw sewage being discharged into a county drain. Saline owns and operates a public

[1] We will uphold an order of a lower court found to be correct although for the wrong reason. *Fout v Dietz,* 401 Mich 403; 258 NW2d 53 (1977).

sewer system. A portion of one of the city sewer lines is located under Michigan Avenue in front of the defendants' properties. In February, 1976, plaintiff Washtenaw County Health Department filed suit in circuit court to obtain an order requiring T & M and Lyle to abate the health hazard by connecting to Saline's sewer system.

On March 3, 1976, the circuit court permitted T & M and Lyle to bring in Pittsfield and Saline as third parties defendant. At a show cause hearing held on March 25, 1976, Saline took the position that it would not approve the connections to its sewer system unless the properties involved were annexed to the city. The circuit court ruled that statutory law required Saline to approve the connection if Pittsfield demanded it. Pittsfield stated a willingness to require T & M and Lyle to hook up to the system, and in fact in June, 1976, the township board resolved that the defendants should connect to the available system. The circuit court entered an order directing Saline to permit the hookups subject to certain conditions, including a proviso that Saline may charge up to three times the rate it charges to property owners within its borders for sewage service.

The Court of Appeals reversed after deciding that the circuit court had improperly construed § 3 of 1972 PA 288 which reads in pertinent part:

"(1) Structures in which sanitary sewage originates lying within the limits of a city, village or township shall be connected to any available public sanitary sewer in the city, village or township if required by the city, village or township.

"(2) Structures in which sanitary sewage originates lying outside the limits of the city, village or township in which the available public sanitary sewer lies shall be connected to the available public sanitary sewer

after the approval of both the city, village or township in which the structure and the public sanitary sewer system lies and if required by the city, village or township in which the sewage originates." MCL 123.283; MSA 5.2769(153).

## II

We concur with the Court of Appeals decision that a fair reading of 1972 PA 288 in its entirety clearly indicates that the Legislature never intended subdivision 1 of § 3 to be used by a citizen from one municipality, or the municipality itself, to compel another municipality to provide extra-territorial sewer service. Section 3(1) authorizes a municipal corporation owning and operating a public sanitary sewage system to require property owners with structures that generate "water-carried sanitary sewage"[2] within the boundaries of the municipal corporation to connect to its sewer system provided the structures are 200 feet or less from the sewer line. In the case at bar, because T & M's and Lyle's structures are outside the limits of Saline, Saline could not require them to connect to its sewer system. Further, because the sewer system was owned and operated by Saline, Pittsfield could not require the hookup under subdivision 1. In short, we believe that subdivision 1 is a legislative authorization to a municipal corporation to require that its citizens cease operation of the potentially hazardous septic tank method of

---

[2] See MCL 123.282(3); MSA 5.2769(152)(3) which reads:

" 'Structure in which sanitary sewage originates' or 'structure' means a building in which toilet, kitchen, laundry, bathing or other facilities which generate water-carried sanitary sewage, are used or available for use for household, commercial, industrial or other purposes."

disposing of sewage and connect to its public sewer system.

Subdivision 2 of § 3 provides a method of connecting the structures belonging to T & M and Lyle to the Saline sewer system. Pittsfield must require the connections, and both Saline and Pittsfield Township must approve them. Thus, the Court of Appeals correctly concluded that § 3(2) of PA 288 controlled the case, and that the connections may not be made without approval by Saline.

In our opinion, the error by the Court of Appeals was its decision that Saline could properly condition its approval of the sewer connections on annexation to the city of the structures involved.

The grant of permission to connect with a sewer is within the municipal authority's discretion and will not be controlled by mandamus unless the discretion is arbitrarily and unreasonably exercised.[3] In determining whether or not Saline acted reasonably in refusing to approve the connections, it is necessary to balance the competing interests.

The part of the sewer line belonging to Saline which runs in front of T & M's and Lyle's properties lies in Pittsfield. Further, the Washtenaw County Health Department had declared that the malfunctioning septic tanks constituted a public health hazard.[4]

---

[3] *Dahlstrom v City of Whitehall,* 14 Mich App 349; 165 NW2d 443 (1968), *Flint Twp v Flint,* 403 Mich 830 (1978); *Ericksen v Sioux Falls,* 70 SD 40, 52-53; 14 NW2d 89, 95 (1944). See generally 55 CJS, Mandamus, § 180, p 349.

[4] Affidavits of county health department employees attached to the county's complaints read in part:

"[I]nspections of said county drain system disclosed that sewage was being discharged into said open county drain from said premises at 7895 East Michigan Avenue [T & M Chevrolet, Inc.] and that the sewerage system at said premises was being maintained in violation of the Washtenaw County Regulation for the Disposal of Sewage and Human Excreta, and thereby constitutes a substantial hazard to public health by creation of nuisances, sources of filth, and conditions menacing the public health in that:

The sole reason Saline gives for its refusal to allow the sewer connections is that T & M's and Lyle's properties are not within the city limits. Saline is willing to permit the connections on annexation to Saline of the structures.

Conservation of this state's water resources as well as the promotion of public health in general are matters of paramount public concern. Sewage disposal is entwined with public health and water conservation matters and is in itself a matter of prime public concern.[5]

In construing the applicable law we will look to the spirit as well as the letter of the law.[6]

Section 1 of 1972 PA 288 makes it quite evident

---

"1. Black, odorous, and foul smelling sewage effluent was being directly discharged into the open county drain from the sewerage system located on the premises at 7895 East Michigan Avenue, Pittsfield Township, Washtenaw County, Michigan.

"2. The sewage effluent was accessible to flies, rodents, and other vectors of disease as well as to persons and domestic pets, and was polluting the stream.

"3. Samples taken on July 22, 1974 showed a coliform count of 24,000,000 per 100 milliliters and a fecal coliform count of 4,600,000 per 100 milliliters.

"4. The sewage system at said premises was test dyed on July 24, 1974 and the dye flowed into the open county drain located to the south of said premises."

"[I]nspection of said drain disclosed that the same was then, operated in violation of the laws of the State of Michigan, being Act No. 127 of the Public Acts of 1970, and in violation of the Washtenaw County Regulation for the Disposal of Sewage and Human Excreta, and thereby constitutes a source of pollution and a substantial hazard to the public health by creation of nuisances, sources of filth, and conditions menacing the public health in that:

"1. Black, odorous, foul smelling, septic tank effluent was flowing into the drain from a pipe coming from the direction of 7911 Michigan Avenue [Lyle Wheel & Axle Service].

"2. This septic tank effluent was accessible to flies, rodents, and other vectors of disease and by persons.

"3. Septic tank effluent was being discharged onto the ground surface within 200 yards of a public road."

[5] *Ripperger v Grand Rapids,* 338 Mich 682, 687; 62 NW2d 585 (1954).

[6] *Cf. People v Spicer,* 402 Mich 406, 409; 263 NW2d 256 (1978).

that the Legislature was concerned with the health hazards posed by septic tank systems:

"Public sanitary sewer systems are essential to the health, safety and welfare of the people of the state. Septic tank disposal systems are subject to failure due to soil conditions or other reasons. Failure or potential failure of septic tank disposal systems poses a threat to the public health, safety and welfare; presents a potential for ill health, transmission of disease, mortality and potential economic blight and constitutes a threat to the quality of surface and subsurface waters of the state. The connection to available public sanitary sewer systems at the earliest, reasonable date is a matter for the protection of the public health, safety and welfare and necessary in the public interest which is declared as a matter of legislative determination." MCL 123.281; MSA 5.2769(151).

To correct situations such as the case at bar requires intergovernmental cooperation. The use of the existing pipeline to correct a public health measure when the pipeline abuts the properties is both necessary and appropriate under the facts of this case. Saline is not required to add sewer pipeline. The use of the existing sewer line will avoid duplication. What is most important is that the use of the Saline sewer system will abate a public health hazard.

Since it is evident that Pittsfield could not have arbitrarily and unreasonably refused approval to the city to run its line through Pittsfield,[7] Saline may not arbitrarily and unreasonably refuse the connections under the facts of this case. Further, we are confident that Pittsfield could not condition approval of the connections on Saline's annexing the properties. When as here an available sewer line crosses municipal boundaries, the municipal-

---

[7] *Flint Twp v Flint, supra.*

ity operating the sewer system may not condition connection on annexation of the properties involved when connection means abatement of a public health hazard.

The judgment of the circuit court is reinstated.

Cᴏʟᴇᴍᴀɴ, C.J., and Kᴀᴠᴀɴᴀɢʜ, Wɪʟʟɪᴀᴍs, Lᴇᴠɪɴ, Fɪᴛᴢɢᴇʀᴀʟᴅ, Rʏᴀɴ, and Bʟᴀɪʀ Mᴏᴏᴅʏ, Jʀ., JJ., concurred.